UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERRY C. BLAIR,<br><br>        Plaintiff,<br><br>     v.<br><br>CDCR, et al.,<br><br>        Defendants. | Case No.: 1:14-cv-01156-SAB (PC)<br><br>ORDER DIRECTING PLAINTIFF TO FILE A THIRD AMENDED COMPLAINT OR NOTIFY THE COURT OF HIS WILLINGNESS TO PROCEED ON CLAIMS FOUND TO BE COGNIZABLE<br><br>[ECF No. 14] |

Plaintiff Perry C. Blair is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Now pending before the Court is Plaintiff's second amended complaint, filed May 4, 2015. (ECF No. 14.)

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-1021 (9th Cir. 2010).

Prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, but the pleading standard is now higher, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted), and to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

Sometime around January 2011, Plaintiff was escorted from the administrative segregation section of Kern Valley State Prison (KVSP) and assigned to share a cell with inmate Rousie.[1] Plaintiff and Rousie were not compatible cellmates based on their rival gang affiliations.

Thereafter Plaintiff was locked in a three by two foot shower from 8:00 a.m. to 6:00 p.m. and both Plaintiff and Rousie were threatened with confiscation of their personal property, placement in segregation, and issuance of a rules violation report. Based on the nature of the threats, Plaintiff and

---

[1] Plaintiff contention that the events in 2011 took place while he was housed at KVSP is questionable, as he does not sue any individual, beyond Dr. Akkanno, for actions that took place at KVSP. All Defendants, besides Dr. Akkanno, are identified as employed at the California Substance Abuse and Treatment Facility, Corcoran State Prison.

inmate Rousie agreed to be housed as cellmates, and Plaintiff believed Rousie would be placed in a different cell within one day.

On March 26, 2013, an inmate manufactured weapon was discovered inside the cell. As a result, Plaintiff and inmate Rousie were transferred to administrative segregation and eventually to the security housing unit at California Substance Abuse and Treatment Facility at Corcoran State Prison (SATF).

Sometime around December 2012, inmate Trotter was released from the hole and was re-assigned to a dwelling which was occupied by Plaintiff. Plaintiff informed the initiating officer that he and inmate Trotter were not compatible cellmates because they were from rival gangs. The initiating officer threatened both inmates with threats of confiscation of their personal property, rules violations, and placement in the hole for delaying a peace officer in their duties and refusing a housing assignment. In fear of the consequences both inmates decided to comply with the officer's demands on reliance that inmate Trotter would be relocated the following morning. However, six months thereafter, Plaintiff was still housed with inmate Trotter.

On May 14, 2013, Plaintiff was informed that marijuana was found in his cell on February 5, 2013, by officer Garza. Officer Garza issued a rules violation report to Plaintiff and inmate Trotter.

On June 7, 2013, officer M. Lefler conducted a search of Plaintiff and inmate Trotter's cell and an inmate manufactured weapon was discovered in the toilet drain. Plaintiff was at the door and tried to flush it down the toilet. Inmate Trotter denied knowledge of the weapon and Plaintiff admitted it belonged to him. Plaintiff stated that he intended to use it to defend himself against inmate Trotter. As a result of the incident, inmate Trotter and Plaintiff were separated.

While awaiting the administrative hearing, officer John Doe initiated a cell compaction with inmate Baker who is rival gang member. Both inmates informed the initiating officer of their rival gang status and the officer responded "if ya'll refuse to signed [sic] the chrono and be cellies your['e] going to forfeit 90 days, lo[se] 10 days of yard, 90 days of dayroom, 90 days of telephone, 90 days of canteen, 90 days of personal property and extension of your SHU-terms." With the reprisal in mind, the inmates decided to accept the living arrangements.

3

After a week after being placed in administrative segregation, inmate Trotter sent his investigative employee officer Garza to interview Plaintiff with regard to the possession of his weapon charge. Plaintiff informed Garza that "the weapon belonged to the Plaintiff and it was to be used on her client in the event that inmate Trotter tried to attack him, and that the weapon was never taken to yard."

On August 8, 2013, Lieutenant J. Johnson conducted the hearing on the rules violation report for possession of a controlled substance. Plaintiff presented evidence that the contraband belonged to Plaintiff because it was discovered on the upper locker that was assigned to him. Plaintiff stated that he "didn't know anything about the drugs until 5-1-2013, when I was served with the notice of the 115 R.V.R. for drugs found on 2-5-2013. As far as I'm concerned the correctional officer could of planted it and C.O. Ibbs logic of it belong [sic] to me due to my bunk assignment that is discredited by your C.O. Welsh testimony."

Lieutenant Johnson opted to call C.O. Ibbs by way of a phone conference to ask "when you discovered the controlled substance in [building] 5, [cell] 101 on the upper locked was it out in the open where you didn't have to search for it because I'm hearing Blair's 115 for constructive possession?" The Plaintiff interjected with, "you mind [sic] as well just tell him exactly what to say if your['e] going to lead him like I'm some type of idiot." Johnson ended the telephone conversation with Ibbs and informed Plaintiff, "I'm finding you guilty possession-constructive possession." Plaintiff inquired as to the meaning of constructive possession. Johnson replied, "it means you had knowledge of and access to the contraband and therefore guilty of constructive possession." Plaintiff stated "that's crazy your telling me an inmate is guilty regardless of the circumstances. Even their cellie admits guilt as long as they were in the cell … I just testified that I had and still have no knowledge of the drugs, where they came from, or even when they were discovered and your own C.O. debunked your other C.O.'s logic and case, so now your using a loop hole which is basically indisputable as long as I occupied the cell with another inmate. That being the case I'm requesting single cell status because your rule places me in a position whether it is impossible to exist in a cell with another inmate without the threat of violence. Due to the fact that I'm therefore obligated to searched [sic] through all of my cellies personal property and dispose of whatever contraband they

may possess. Just search through a cellie's personal property is a violation of cell conduct which will result in a physical altercation especially here on the high security facility on top of this your['e] instructing us to dispose of them contraband or run to the staff to be labeled a rat… That's a death sentence in here. It's already bad enough your['e] forcing us to house with rival gang members against our will." Lieutenant Johnson responded "your['e] not obligated to house with rival gang members, you can refuse incompatible cellies." Plaintiff informed Johnson, "yeah right, my last three cellies were incompatible and we tried to inform your staff of our rival gang status each time we were threatened with disciplinary reprisal for refusing to accept each other as cellies. Johnson indicated that it was an exception and rarely happens. Plaintiff then informed Johnson that he and his current cellie were rival gang members. In response, Lieutenant Johnson insulted Plaintiff by telling him to just "handle your business [and] if your['e] scared go S.N.Y." Plaintiff replied "nah your['e] the bitch cuz [sic] back in the dayz [sic] C.O.s would actually fight the inmates instead of waiting until we're handcuffed to disrespect us. Now ya'll try to cause disruption amongst us so you can sit back and entertain yourselfs and write us up."

Immediately after the hearing, Lieutenant Johnson, Lieutenant Ybarra, Sergeant Chan, officer O'Daniels, officer Franco, officer Alva, and officer Esqueda started telling all of the inmates housed in building E-1 that Plaintiff "was a snitch and need to get [sic] dealt with."

On August 29, 2013, Plaintiff received the "falsified" final copy of the administrative hearing for the rules violation report log number C-13-05-004. In retaliation for Plaintiff utilizing the grievance process Lieutenant Johnson falsified the documents to quote Plaintiff as stating, "It wasn't mine. It was his. No I tell all my cellies, if you have it, I don't want to see it."

On top of falsifying the document he also directed his subordinates to inform the other inmates housed in E-1 "that the Plaintiff's paperwork was faulty and proves he's a snitch." Defendants Johnson, Chan, Franco, O'Daniels, Alva, Esqueda, and Santos began to tell all the inmates to "deal with" Plaintiff "because he's a snitch and he has the paperwork in his cell. He snitched on his old cell Trotter on a possession charge, ask to see his 115 final copy logged number C-13-05004." As a result other inmates requested to view Plaintiff's rules violation report.

On September 1, 2013, Plaintiff sent a letter to the warden. On September 20, 2013, and November 9, 2013, Plaintiff sent two more letters to the warden, Ombudsman Office and Office of Inspector General (OIG) explaining the corrupt action taken by prison officials in an attempt to have Plaintiff injured.

On December 3, 2013, the OIG replied to Plaintiff's complaint letter and after investigation found that Plaintiff's claim was unsubstantiated. Plaintiff also spoke with the warden at yard time, and he informed Plaintiff that "there was nothing he could do and that I should apologize to the Lt. and ask him nicely to modify the report."

Throughout the ordeal, Plaintiff and inmate Baker continually requested to be separated. Baker continued to say there is simply too much controversy surrounding the Plaintiff and it was making him look bad because the two were rival gang members and the correctional officers were reporting that Plaintiff was a snitch. Correctional officers would instruct inmate Baker to handle his business and take Plaintiff down.

On September 5, 2013, officers Franco and O'Daniels approached Plaintiff's cell claiming Baker was scheduled to have a conference with his psychologist. As a result, both Plaintiff and Baker were handcuffed, and Plaintiff was advised that he was being moved because Baker was passing love letters to his psychologist claiming to be from Plaintiff.

After Plaintiff and inmate Baker advised officer O'Daniels of the need to be separated, O'Daniels stated "stop acting like bitches and handle your business, that's why ya'll were moved over here where can't nobody hear the screams."

On September 11, 2013, Plaintiff and inmate Baker had a physical altercation inside the cell, and Plaintiff suffered permanent injuries to his lower back, neck, black eye, and an asthma attack due to the responding officers' use of pepper spray to break up the fight.

Plaintiff continuously requested a back brace, cane, and M.R.I. to diagnose and treat his injuries due to the severe pain he was suffering which caused him to collapse without notice. Plaintiff's calls for "man down" were ignored by correctional officers.

On September 28, 2013, officer A. Sanchez escorted inmate Russ to the Plaintiff's cell to initiate a cell compaction. Plaintiff and inmate Russ described that they were not compatible because

Plaintiff is "Jewish" and inmate Russ is "Muslim."  Officer Sanchez threatened disciplinary action for refusing to cell with inmate Russ, and officer Chan approved the action.

On October 10, 2013, officer Santos introduced himself as the Investigative Employee (IE) assigned to the rules violation report log numbers ASE-13-09-018 (delaying officer and refusing a cellmate) and ASE-13-09-002 (fighting), and asked Plaintiff "what task the Plaintiff wanted him to carry out in preparation of his defense?"  Plaintiff submitted a list of witnesses to be questioned and Santos directed Plaintiff "just plead guilty, you were caught fighting and you refused a celly." Plaintiff replied, "nah I want to present the mitigating factors to the committee in an attempt to get the mid or low disciplinary sanction."  Santos began arguing with Plaintiff yelling, "just take the guilty plea."  No matter how calm the Plaintiff remained Santos continued to yell at him trying to force him to "just plead guilty."

On October 11, 2013, officer Esqueda introduced himself as the working IE, and after opening the file stated, "This is odd, I've never seen this before.  Lt. Ybarra is say [sic] I can't question these witnesses for you.  Now did he even know what you wanted to ask them."  Officer Esqueda asked Lieutenant Ybarra about the witness interviews and Ybarra stated "it looks as if your line of questions are in preparation of a lawsuit.  Your cellie already filed a government claims and he's not about to assist ya'll or help build your case."

Officer Esqueda spoke with Lieutenant Ybarra again and then stated "I will question all your witnesses and type this."  However, Esqueda never questioned Plaintiff's inmate or staff witnesses and only typed the Plaintiff's affidavit, and purposely falsified in writing that Plaintiff was "sensitive needs yard status."

During the two rules violation hearings conducted by Lieutenant Ybarra, he refused to allow Plaintiff to speak in his defense.

On November 7, 2013, Plaintiff and inmate Badelle were housed together and were compatible cellmates.  However, officer O'Daniels approached Plaintiff's cell to initiate a swap of cellmates. After threatening to take all of inmate Badelle's property, Plaintiff and Badelle signed the chrono as directed and as soon as Plaintiff was uncuffed he attacked inmate Dawson.

1  Plaintiff did not receive the necessary medical attention following the altercation and was
2  continually ignored by the doctor, John Doe #2. While using the restroom, Plaintiff back and legs
3  gave out causing him to fall and injure his thumb, however, he was not seen by staff for a few days
4  despite the fact his thumb swelled to twice its original size.

5  On June 2, 2014, Plaintiff's back and legs gave out again causing him to fall backward into the
6  toilet area of the bathroom. Plaintiff's cellmate called "man down," but no one responded for hours
7  and instead the tower officer, John Doe #3 told them to "shut up and stop yelling."

8  When officers, John Doe #4 and #5 responded they threatened to pepper spray the Plaintiff if
9  he didn't shut up. When the MTA, John Doe #6, walked the floor, Plaintiff informed the MTA that he
10 could not stand up and that he had fallen hitting his tailbone on the toilet. The MTA handed the
11 Plaintiff a medical request form and told him to turn it when he walks again.

12  Plaintiff informed the MTA that it was a medical emergency because he was unable to stand
13 or move due to the severe pain. Officer, John Doe #4, told Plaintiff to stand up and get the form
14 because he was not going to be carried to the medical unit. Plaintiff informed the officer of the need
15 to hit the alarm button.

16 The following day, Plaintiff was forced to walk to the medical unit in waist chains, without any
17 assistance. The walk would normally take two to three minutes, however, due to the injury it took
18 Plaintiff thirty-five to forty-five minutes. It was discovered that Plaintiff suffered a fractured tailbone
19 caused by Lumbar Radiculopathy (which consists of the symptoms Plaintiff complained of following
20 the injuries on September 11, 2013). Plaintiff was given a cane and medication, but was transferred to
21 Kern Valley State Prison (KVSP) prior to receiving a back brace. Upon his transfer to KVSP, Dr.
22 Akkanno immediately cancelled Plaintiff's medication and refused to issue him the prescribed back
23 brace and tried to confiscate his cane.

## III.
## DISCUSSION

### A. Retaliation

Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing

8

Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)).  Also protected by the First Amendment is the right to pursue civil rights litigation in federal court without retaliation.  Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Based on Plaintiff's allegations that Defendant Lieutenant Johnson falsely found him guilty of a rules violation report for possession of weapon because Plaintiff filed an inmate grievance is sufficient, at the pleading stage, to state a cognizable claim for retaliation against Defendant Johnson.

**B.  Eighth Amendment Violations**

a.  Incompatible Cellmates

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).  Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.  Farmer v. Brennan, 511 U.S. 825, 832-33 (1994).  Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.  Farmer, 511 U.S. at 833-34 (quotation marks omitted); Clem v. Lomeli, 566 F.3d 1177, 1181 (9th Cir. 2009); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).  However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm.  Farmer, 511 U.S. at 834, 841; Clem, 566 F.3d at 1181; Hearns, 413 F.3d at 1040.

In addition, if failure to protect is alleged, the defendant must have had a reasonable opportunity to intervene.  Orwat v. Maloney, 360 F.Supp.2d 146, 155 (D. Mass. 2005), citing Gaudreault v. Municipality of Salem, 923 F.2d 203, 207 at n.3 (1st Cir. 1991).  Prison officials must

9

1 provide prisoners with personal safety. See Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir.
2 1986), abrogated in part on other grounds by Sandin v. Conner, 515 U.S. 472 (1995).
3 Based on Plaintiff's allegations in the complaint, Plaintiff states a cognizable Eighth
4 Amendment claim against Lieutenant Johnson, J. Alva, A. Chan, O'Daniels, Franco, A. Sanchez for
5 housing Plaintiff with incompatible cellmates.

6       b.       Labeling Plaintiff as a Snitch and Rat

7 Based on Plaintiff's allegations in the amended complaint, Plaintiff states a cognizable Eighth
8 Amendment claim against Defendants Lieutenant Johnson, Lieutenant Ybarra, Sergeant Chan,
9 O'Daniels, Franco, Alva, Esqueda, Santos, and John Doe (Assistant Warden) for labeling and
10 deliberately telling other inmates that Plaintiff was a "snitch" and "rat" thereby intentionally
11 subjecting him to the threat of potential physical violence from other inmates.

12     **C.**     **Conspiracy**

13 To state a claim for conspiracy under section 1983, Plaintiff must show the existence of an
14 agreement or a meeting of the minds to violate his constitutional rights, and an actual deprivation of
15 those constitutional rights. Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010); Franklin v. Fox, 312
16 F.3d 423, 441 (9th Cir. 2001). Although Plaintiff contends that Defendants conspired to retaliate
17 against him for exercising his right to file grievances, Plaintiff fails to show the existence of an
18 agreement or a meeting of minds to retaliate against for exercising his First Amendment right.

19     **D.**     **Deliberate Indifference to Serious Medical Need**

20 While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical
21 care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to
22 an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled
23 in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v.
24 Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).
25 Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition
26 could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that
27 "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing
28 Jett, 439 F.3d at 1096). Deliberate indifference is shown by "(a) a purposeful act or failure to respond

1  to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680
2  F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective
3  recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and
4  quotation marks omitted); Wilhelm, 680 F.3d at 1122.

Plaintiff's bare claim that he did not receive medical attention following the altercation with inmate Dawson and his requests were ignored by doctor, John Doe #2 is insufficient, factually, to support a claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment.

Plaintiff's claim that on June 2, 2014, his back and legs gave out causing him to fall backward into the toilet area of the bathroom, and officer John Doe #3 responded by telling Plaintiff to "shut up and stop yelling," is sufficient to state a cognizable claim for deliberate indifference. In addition, Plaintiff's claim that officers John Doe #4 and #5 threatened to pepper spray if he didn't shut up, liberally construed, is sufficient to state a claim for deliberate indifference to a serious medical need. Further, Plaintiff's claim that after he informed MTA John Doe #6 he could not stand up because he had fallen hitting his tailbone on the toilet, he was required to walk to the medical unit causing further injury is sufficient to state a cognizable claim for deliberate indifference.

Plaintiff claim that upon his transfer to Kern Valley State Prison from Corcoran State Prison Dr. Akkanno cancelled his pain medication and refused to issue him a prescribed back brace, alone, is insufficient to demonstrate deliberate indifference. There are simply no facts alleged to indicate that Dr. Akkanno was aware that cancelling Plaintiff's pain medication or failing to provide a back brace would create a significant risk of harm to Plaintiff or that Dr. Akkanno deliberately ignored such risk.

### E. Due Process Violation

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556, (1974). With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary

action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), abrogated on other grounds by Sandin v. Connor, 515 U.S. 472 (1995). In addition "[s]ome evidence" must support the decision of the hearing officer. Superintendent v. Hill, 472 U.S. 445, 455 (1985). The standard is not particularly stringent and the relevant inquiry is whether "there is *any* evidence in the record that could support the conclusion reached . . . ." Id. at 455-56 (emphasis added).

Based on Plaintiff's allegations in the amended complaint that he was denied the opportunity to present witnesses at his rules violation report hearing, log numbers ASE013-09-018 (delaying officer and refusing a cellmate) and ASE-13-09-002 (fighting), Plaintiff states a cognizable due process claim against Defendants A. Santos, Esqueda, and Ybarra.

### F. Supervisory Liability

Plaintiff names the Warden at SATF as a Defendant in this action and seeks liability against them.

Under section 1983, Plaintiff must prove that the defendants holding supervisory positions personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). There is no respondeat superior liability, and each defendant is only liable for his or her own misconduct. Iqbal, at 1948-49. A supervisor may be held liable for the constitutional violations of his or her subordinates only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

Plaintiff's complaint is devoid of any allegations supporting the existence of a supervisory liability claim against the Warden at SATF. The only basis for such a claim would be respondeat superior, which is precluded under section 1983.

## IV.

## CONCLUSION AND ORDER

Plaintiff's second amended complaint states a cognizable Eighth Amendment claim for cruel and unusual punishment against Defendants Johnson, Ybarra, Alva, Chan, O'Daniels, Franco, Sanchez, Esqueda, Santos, and John Doe (Assistant Warden), a cognizable Eighth Amendment claim for deliberate indifference to a serious medical need against John Does #3, 4, 5, and 6, and a cognizable due process violation against Defendants Santos, Esqueda, and Ybarra. Plaintiff has not sufficiently alleged facts for any other claims against any of the other named Defendants. The Court will provide Plaintiff with *one final* opportunity to file an amended complaint curing the deficiencies identified by the Court in this order, if he believes he can do so in good faith. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only on the claims found to be cognizable, Plaintiff may so notify the Court in writing, and the Court will issue a recommendation for dismissal of the other claims and Defendants, and will forward Plaintiff nine (9) summonses and nine (9) USM-285 forms for completion and return.[2] Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process.

If Plaintiff opts to amend, his amended complaint should be brief. Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's constitutional or other federal rights: "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional

---

[2] The Court cannot order service of a Doe defendant because the United States Marshal cannot serve a Doe Defendant. Therefore, before the Court orders the United States Marshal to serve a Doe defendant, Plaintiff will be required to identify him or her with enough information to locate the defendant for service of process.

deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).  With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a).  In other words, it is not necessary at this stage to submit evidence to prove the allegations in Plaintiff's complaint because at this stage Plaintiff's factual allegations will be accepted as true.

Although Plaintiff's factual allegations will be accepted as true and "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

Plaintiff is advised that an amended complaint supersedes the original complaint.  Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).  The amended complaint must be "complete in itself without reference to the prior or superseded pleading."  Local Rule 220.  Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.  In other words, even the claims that were properly stated in the original complaint must be completely stated again in the amended complaint.  Finally, Plaintiff is advised that, should he choose to amend, he may not bring unrelated claims in the same action.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff an amended civil rights complaint form;

2. Within thirty (30) days from the date of service of this order, Plaintiff must either:

   a. File a third amended complaint curing the deficiencies identified by the Court in this order, or

   b. Notify the Court in writing that he does not wish to file an amended complaint and wishes to proceed only against the above-named Defendants on the claims

found to be cognizable; and

3. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated:   **August 31, 2015**

UNITED STATES MAGISTRATE JUDGE

15