**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PERRY C. BLAIR, | ) Case No.: 1:14-cv-01156-LJO-SAB (PC) |
| Plaintiff, | ) |
| | ) FINDINGS AND RECOMMENDATIONS |
| v. | ) REGARDING DEFENDANTS' MOTION TO |
| | ) DISMISS, DEFENDANTS' MOTION TO SEVER |
| CDCR, et al., | ) CLAIMS, AND PLAINTIFF'S MOTION TO |
| | ) AMEND |
| Defendants. | ) |
| | ) [ECF Nos. 31, 32, 38.) |
| | ) |

Plaintiff Perry C. Blair is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff consented to United States magistrate judge jurisdiction on August 21, 2014.  (ECF No. 7.)  Defendants have not consented or declined to United States magistrate judge jurisdiction.  This action was subsequently assigned to United States district judge Lawrence J. O'Neill.

Currently before the Court is Defendants' motion to dismiss and motion to sever claims, filed February 9, 2016, respectively.  (ECF Nos. 31, 32.)

**I.**

**RELEVANT BACKGROUND**

This action is proceeding against Defendants Johnson, Ybarra, Alva, Chan, O'Daniels, Franco, Sanchez, Esqueda, Santos and John Doe (Assistant Warden) for cruel and unusual punishment in violation of the Eighth Amendment, against Defendant John Does # 3, 4, 5, and 6, for deliberate

indifference to a serious medical need, and against Defendants Santos, Esqueda, and Ybarra for due process violations.

On February 9, 2016, Defendants filed a motion to dismiss the complaint for failure to state a cognizable claim for relief and a separate motion to sever claims.  (ECF Nos. 31, 32.)  Plaintiff filed an opposition on June 2, 2016, and Defendants filed a reply on June 9, 2016.  (ECF Nos. 43-46.)

**II.**

**DISCUSSION**

**A.      Motion to Dismiss Standard**

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citations omitted).  In resolving a 12(b)(6) motion, a court's review is generally limited to the operative pleading.  Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (quotation marks omitted); Conservation Force, 646 F.3d at 1242; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The Court must accept the factual allegations as true and draw all reasonable inferences in favor of the non-moving party, Daniels-Hall, 629 F.3d at 998; Sanders, 504 F.3d at 910; Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000), and in this Circuit, pro se litigants are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

"If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, Plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)."  Starr v. Baca, 652 F.3d 1202, 1216-1217 (9th Cir. 2011).  "Plaintiff's complaint may be

2

1   dismissed only when defendant's plausible alternative explanation is to convincing that plaintiff's

2   explanation is implausible.  The standard at this stage of the litigation is not that plaintiff's explanation

3   must be true or even probable.  The factual allegations of the complaint need only 'plausibly suggest

4   an entitlement to relief.'"  Id.  "Rule 8(a) 'does not impose a probability requirement at the pleading

5   stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal

6   evidence' to support the allegations."  Id., quoting Twombly, 550 U.S. at 556.

7   **B.     Prior Screening Order**

8       As an initial matter, Plaintiff's second amended complaint was screened on September 1, 2015

9   and the Court found that Plaintiff stated the above-mentioned cognizable claims.  28 U.S.C. § 1915A;

10  Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014) ("Dismissal for failure to state a claim under §

11  1915A 'incorporates the familiar standard applied in the context of failure to state a claim under

12  Federal Rule of Civil Procedure 12(b)(6).'") (quoting Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th

13  Cir. 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012) (section 1915(e)(2)(B)(ii)

14  screening standard is the same as Rule 12(b)(6) standard).  Defendants submit that "the Screening

15  Order does not specifically address the arguments put forth in this motion.  Further, as explained

16  below, the Court did not separately discuss each allegation when determining cognizable claims

17  against specific Defendants."  (ECF No. 32, Mot. at 1, fn.1.)  While the Court's screening order did

18  not conduct an individual analysis as to each Defendant, the Court conducted the same examination as

19  it does in all screening orders.  In other words, the Court's conclusion was based upon the same legal

20  standards as this 12(b)(6) motion.  The Court is not required to engage in a full analysis and discuss

21  every detail of the claims.  Indeed, it is this Court's practice to provide a *detailed* analysis only where

22  it finds a *failure* to state a claim.  Insofar as Defendants argue that Plaintiff's claims should be

23  dismissed for failure to state a cognizable claim for relief, they fail to acknowledge and appreciate the

24  Court's prior findings.  As explained below, Plaintiff's allegations are sufficient to allow him to

25  proceed past the pleading stage.[1]

26

27  _____

28  [1] Defense counsel is advised to exercise caution in filing future motions to dismiss after the Court has screened the complaint and found a cognizable claim without limitation as to how and why the screening order is incorrect.  A motion to dismiss is not proper to merely re-examine or disagree with the Court's screening order.   However, if issues are

C.      **Complaint Allegations**[2]

Sometime around January 2011, Plaintiff was escorted from the administrative segregation section of Kern Valley State Prison (KVSP) and assigned to share a cell with inmate Rousie.[3]  Plaintiff and Rousie were not compatible cellmates based on their rival gang affiliations.

Thereafter Plaintiff was locked in a three by two foot shower from 8:00 a.m. to 6:00 p.m. and both Plaintiff and Rousie were threatened with confiscation of their personal property, placement in segregation, and issuance of a rules violation report.  Based on the nature of the threats, Plaintiff and inmate Rousie agreed to be housed as cellmates, and Plaintiff believed Rousie would be placed in a different cell within one day.

On March 26, 2013, an inmate manufactured weapon was discovered inside the cell.  As a result, Plaintiff and inmate Rousie were transferred to administrative segregation and eventually to the security housing unit at California Substance Abuse and Treatment Facility at Corcoran State Prison (SATF).

Sometime around December 2012, inmate Trotter was released from the hole and was re-assigned to a dwelling which was occupied by Plaintiff.  Plaintiff informed the initiating officer that he and inmate Trotter were not compatible cellmates because they were from rival gangs.  The initiating officer threatened both inmates with confiscation of their personal property, rules violations, and placement in the hole for delaying a peace officer in their duties and refusing a housing assignment.  In fear of the consequences both inmates decided to comply with the officer's demands on reliance that inmate Trotter would be relocated the following morning.  However, six months thereafter, Plaintiff was still housed with inmate Trotter.

---

unaddressed or the court erred in its screening order, a motion to dismiss would be a possible remedy.  If such is the case, a movant should pinpoint in the motion the specific error and the basis in law and not request that the whole action be re-examined.  The standards of "notice pleading" is what governs this court when screening a civil rights complaint.

[2] This case proceeds on Plaintiff's second amended complaint, filed on May 4, 2015.  (ECF No. 14.)

[3] Plaintiff contention that the events in 2011 took place while he was housed at KVSP is questionable, as he does not sue any individual, beyond Dr. Akkanno, for actions that took place at KVSP.  All Defendants, besides Dr. Akkanno, are identified as employed at the California Substance Abuse and Treatment Facility, Corcoran State Prison.

4

1   On May 14, 2013, Plaintiff was informed that marijuana was found in his cell on February 5,

2   2013, by officer Garza.  Officer Garza issued a rules violation report to Plaintiff and inmate Trotter.

3   On June 7, 2013, officer M. Lefler conducted a search of Plaintiff and inmate Trotter's cell and

4   an inmate manufactured weapon was discovered in the toilet drain.  Plaintiff was at the door and tried

5   to flush it down the toilet.  Inmate Trotter denied knowledge of the weapon and Plaintiff admitted it

6   belonged to him.  Plaintiff stated that he intended to use it to defend himself against inmate Trotter.

7   As a result of the incident, inmate Trotter and Plaintiff were separated.

8   While awaiting the administrative hearing, officer John Doe initiated a cell compaction with

9   inmate Baker who is rival gang member.  Both inmates informed the initiating officer of their rival

10   gang status and the officer responded "if ya'll refuse to signed [sic] the chrono and be cellies your['e]

11   going to forfeit 90 days, lo[se] 10 days of yard, 90 days of dayroom, 90 days of telephone, 90 days of

12   canteen, 90 days of personal property and extension of your SHU-terms."  With the reprisal in mind,

13   the inmates decided to accept the living arrangements.

14   After a week after being placed in administrative segregation, inmate Trotter sent his

15   investigative employee officer Garza to interview Plaintiff with regard to the possession of his weapon

16   charge.  Plaintiff informed Garza that "the weapon belonged to the Plaintiff and it was to be used on

17   her client in the event that inmate Trotter tried to attack him, and that the weapon was never taken to

18   yard."

19   On August 8, 2013, Lieutenant J. Johnson conducted the hearing on the rules violation report

20   for possession of a controlled substance.  It was alleged that the contraband belonged to Plaintiff

21   because it was discovered on the upper locker that was assigned to him.  Plaintiff stated that he "didn't

22   know anything about the drugs until 5-1-2013, when I was served with the notice of the 115 R.V.R.

23   for drugs found on 2-5-2013.  As far as I'm concerned the correctional officer could of planted it and

24   C.O. Ibbs logic of it belong [sic] to me due to my bunk assignment that is discredited by your C.O.

25   Welsh testimony."

26   Lieutenant Johnson opted to call C.O. Ibbs by way of a phone conference to ask "when you

27   discovered the controlled substance in [building] 5, [cell] 101 on the upper locked was it out in the

28   open where you didn't have to search for it because I'm hearing Blair's 115 for constructive

5

possession?" The Plaintiff interjected with, "you mind [sic] as well just tell him exactly what to say if your['e] going to lead him like I'm some type of idiot." Johnson ended the telephone conversation with Ibbs and informed Plaintiff, "I'm finding you guilty possession-constructive possession." Plaintiff inquired as to the meaning of constructive possession. Johnson replied, "it means you had knowledge of and access to the contraband and therefore guilty of constructive possession." Plaintiff stated "that's crazy your telling me an inmate is guilty regardless of the circumstances. Even their cellie admits guilt as long as they were in the cell … I just testified that I had and still have no knowledge of the drugs, where they came from, or even when they were discovered and your own C.O. debunked your other C.O.'s logic and case, so now your using a loop hole which is basically indisputable as long as I occupied the cell with another inmate. That being the case I'm requesting single cell status because your rule places me in a position whether it is impossible to exist in a cell with another inmate without the threat of violence. Due to the fact that I'm therefore obligated to searched [sic] through all of my cellies personal property and dispose of whatever contraband they may possess. Just search through a cellie's personal property is a violation of cell conduct which will result in a physical altercation especially here on the high security facility on top of this your['e] instructing us to dispose of them contraband or run to the staff to be labeled a rat… That's a death sentence in here. It's already bad enough your['e] forcing us to house with rival gang members against our will." Lieutenant Johnson responded "your['e] not obligated to house with rival gang members, you can refuse incompatible cellies." Plaintiff informed Johnson, "yeah right, my last three cellies were incompatible and we tried to inform your staff of our rival gang status each time we were threatened with disciplinary reprisal for refusing to accept each other as cellies. Johnson indicated that it was an exception and rarely happens. Plaintiff then informed Johnson that he and his current cellie were rival gang members. In response, Lieutenant Johnson insulted Plaintiff by telling him to just "handle your business [and] if your['e] scared go S.N.Y." Plaintiff replied "nah your['e] the bitch cuz [sic] back in the dayz [sic] C.O.s would actually fight the inmates instead of waiting until we're handcuffed to disrespect us. Now ya'll try to cause disruption amongst us so you can sit back and entertain yourselfs and write us up."

1    Immediately after the hearing, Lieutenant Johnson, Lieutenant Ybarra, Sergeant Chan, officer

2    O'Daniels, officer Franco, officer Alva, and officer Esqueda started telling all of the inmates housed in

3    building E-1 that Plaintiff "was a snitch and need to get [sic] dealt with."

4    On August 29, 2013, Plaintiff received the "falsified" final copy of the administrative hearing

5    for the rules violation report log number C-13-05-004.  In retaliation for Plaintiff utilizing the

6    grievance process Lieutenant Johnson falsified the documents to quote Plaintiff as stating, "It wasn't

7    mine. It was his.  No I tell all my cellies, if you have it, I don't want to see it."

8    On top of falsifying the document he also directed his subordinates to inform the other inmates

9    housed in E-1 "that the Plaintiff's paperwork was faulty and proves he's a snitch."  Defendants

10   Johnson, Chan, Franco, O'Daniels, Alva, Esqueda, and Santos began to tell all the inmates to "deal

11   with" Plaintiff "because he's a snitch and he has the paperwork in his cell.  He snitched on his old cell

12   Trotter on a possession charge, ask to see his 115 final copy logged number C-13-05004."  As a result

13   other inmates requested to view Plaintiff's rules violation report.

14   On September 1, 2013, Plaintiff sent a letter to the warden.  On September 20, 2013, and

15   November 9, 2013, Plaintiff sent two more letters to the warden, Ombudsman Office and Office of

16   Inspector General (OIG) explaining the corrupt action taken by prison officials in an attempt to have

17   Plaintiff injured.

18   On December 3, 2013, the OIG replied to Plaintiff's complaint letter and after investigation

19   found that Plaintiff's claim was unsubstantiated.  Plaintiff also spoke with the warden at yard time, and

20   he informed Plaintiff that "there was nothing he could do and that I should apologize to the Lt. and ask

21   him nicely to modify the report."

22   Throughout the ordeal, Plaintiff and inmate Baker continually requested to be separated.

23   Baker continued to say there is simply too much controversy surrounding the Plaintiff and it was

24   making him look bad because the two were rival gang members and the correctional officers were

25   reporting that Plaintiff was a snitch.  Correctional officers would instruct inmate Baker to handle his

26   business and take Plaintiff down.

27   On September 5, 2013, officers Franco and O'Daniels approached Plaintiff's cell claiming

28   Baker was scheduled to have a conference with his psychologist.  As a result, both Plaintiff and Baker

7

were handcuffed, and Plaintiff was advised that he was being moved because Baker was passing love letters to his psychologist claiming to be from Plaintiff.

After Plaintiff and inmate Baker advised officer O'Daniels of the need to be separated, O'Daniels stated "stop acting like bitches and handle your business, that's why ya'll were moved over here where can't nobody hear the screams."

On September 11, 2013, Plaintiff and inmate Baker had a physical altercation inside the cell, and Plaintiff suffered permanent injuries to his lower back, neck, black eye, and an asthma attack due to the responding officers' use of pepper spray to break up the fight.

Plaintiff continuously requested a back brace, cane, and M.R.I. to diagnose and treat his injuries due to the severe pain he was suffering which caused him to collapse without notice. Plaintiff's calls for "man down" were ignored by correctional officers.

On September 28, 2013, officer A. Sanchez escorted inmate Russ to the Plaintiff's cell to initiate a cell compaction.  Plaintiff and inmate Russ described that they were not compatible because Plaintiff is "Jewish" and inmate Russ is "Muslim."  Officer Sanchez threatened disciplinary action for refusing to cell with inmate Russ, and officer Chan approved the action.

On October 10, 2013, officer Santos introduced himself as the Investigative Employee (IE) assigned to the rules violation report log numbers ASE-13-09-018 (delaying officer and refusing a cellmate) and ASE-13-09-002 (fighting), and asked Plaintiff "what task the Plaintiff wanted him to carry out in preparation of his defense?"  Plaintiff submitted a list of witnesses to be questioned and Santos directed Plaintiff "just plead guilty, you were caught fighting and you refused a celly." Plaintiff replied, "nah I want to present the mitigating factors to the committee in an attempt to get the mid or low disciplinary sanction."  Santos began arguing with Plaintiff yelling, "just take the guilty plea."  No matter how calm the Plaintiff remained Santos continued to yell at him trying to force him to "just plead guilty."

On October 11, 2013, officer Esqueda introduced himself as the working IE, and after opening the file stated, "This is odd, I've never seen this before.  Lt. Ybarra is say [sic] I can't question these witnesses for you.  Now did he even know what you wanted to ask them."  Officer Esqueda asked Lieutenant Ybarra about the witness interviews and Ybarra stated "it looks as if your line of questions

are in preparation of a lawsuit.  Your cellie already filed a government claims and he's not about to

assist ya'll or help build your case."

Officer Esqueda spoke with Lieutenant Ybarra again and then stated "I will question all your

witnesses and type this."  However, Esqueda never questioned Plaintiff's inmate or staff witnesses and

only typed the Plaintiff's affidavit, and purposely falsified in writing that Plaintiff was "sensitive

needs yard status."

During the two rules violation hearings conducted by Lieutenant Ybarra, he refused to allow

Plaintiff to speak in his defense.

On November 7, 2013, Plaintiff and inmate Badelle were housed together and were compatible

cellmates.  However, officer O'Daniels approached Plaintiff's cell to initiate a swap of cellmates.

After threatening to take all of inmate Badelle's property, Plaintiff and Badelle signed the chrono as

directed and as soon as Plaintiff was uncuffed he attacked inmate Dawson.

Plaintiff did not receive the necessary medical attention following the altercation and was

continually ignored by the doctor, John Doe #2.  While using the restroom, Plaintiff back and legs

gave out causing him to fall and injure his thumb, however, he was not seen by staff for a few days

despite the fact his thumb swelled to twice its original size.

On June 2, 2014, Plaintiff's back and legs gave out again causing him to fall backward into the

toilet area of the bathroom.  Plaintiff's cellmate called "man down," but no one responded for hours

and instead the tower officer, John Doe #3 told them to "shut up and stop yelling."

When officers, John Doe #4 and #5 responded they threatened to pepper spray the Plaintiff if

he didn't shut up.  When the MTA, John Doe #6, walked the floor, Plaintiff informed the MTA that he

could not stand up and that he had fallen hitting his tailbone on the toilet.  The MTA handed the

Plaintiff a medical request form and told him to turn it when he walks again.

Plaintiff informed the MTA that it was a medical emergency because he was unable to stand or

move due to the severe pain.  Officer, John Doe #4, told Plaintiff to stand up and get the form because

he was not going to be carried to the medical unit.  Plaintiff informed the officer of the need to hit the

alarm button.

The following day, Plaintiff was forced to walk to the medical unit in waist chains, without any assistance.  The walk would normally take two to three minutes, however, due to the injury it took Plaintiff thirty-five to forty-five minutes.  It was discovered that Plaintiff suffered a fractured tailbone caused by Lumbar Radiculopathy (which consists of the symptoms Plaintiff complained of following the injuries on September 11, 2013).  Plaintiff was given a cane and medication, but was transferred to Kern Valley State Prison (KVSP) prior to receiving a back brace.

### D.  Plaintiff's Surreply Filings

On July 14, 2016, after the briefing was complete under Local Rule 230(l), Plaintiff filed several motions in response to Defendants' reply to his prior oppositions, i.e. surreplies.  (ECF Nos. 47, 48, 49, 50, 51.)

Parties do not have the right to file surreplies and motions are deemed submitted when the time to reply has expired.  Local Rule 230(*l*).  The Court generally views motions for leave to file a surreply with disfavor.  Hill v. England, No. CVF05869 REC TAG, 2005 WL 3031136, at *1 (E.D. Cal. 2005) (citing Fedrick v. Mercedes-Benz USA, LLC, 366 F.Supp.2d 1190, 1197 (N.D. Ga. 2005)). However, district courts have the discretion to either permit or preclude a surreply.  See U.S. ex rel. Meyer v. Horizon Health Corp., 565 F.3d 1195, 1203 (9th Cir. 2009) (district court did not abuse discretion in refusing to permit "inequitable surreply"); JG v. Douglas County School Dist., 552 F.3d 786, 803 n.14 (9th Cir. 2008) (district court did not abuse discretion in denying leave to file surreply where it did not consider new evidence in reply); Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996) (new evidence in reply may not be considered without giving the non-movant an opportunity to respond).

In this instance, the Court did not grant Plaintiff leave to file a surreply and did not desire any further briefing, beyond the opposition and reply, authorized by the Court.  However, as explained below in section F, in the interest of justice, the Court will consider Plaintiff's surreply as it relates to further amendment to the cure the deficiencies under Federal Rule of Civil Procedure 20.

### E.  Defendants' Motion to Dismiss

Defendants move to dismiss: (1) Plaintiff's retaliation claim against Defendant Johnson; (2) the deliberate indifference claim against the Assistant Warden (John Doe) relating to being labeled a

"snitch"; (3) the deliberate indifference claim against Defendants Chan and Sanchez regarding housing with cellmate Russ; (4) the deliberate indifference claim against Defendant O'Daniels regarding housing with cellmate Dawson; (5) the deliberate indifference claim against Defendant Alva relating to housing; (6) Plaintiff's due process claims; (7) the requests for injunctive relief; and (8) claims against all named Defendants in their official capacities.   The Court will address each argument separately below.

        1.    <u>Retaliation Claim Against Defendant Johnson</u>

As an initial matter, the Court's September 1, 2015, screening order inadvertently referenced that Defendant Johnson falsely found Plaintiff guilty of a rules violation report for possession of a "weapon"; however, the rules violation report relevant to Johnson's actions is for rules violation report for possession of contraband discovered in his cell.   Nonetheless, the specific facts of the rules violation report is immaterial to the determination of whether Plaintiff's states a cognizable retaliation claim.   In other words, it is the issuance of the rules violation report in retaliation is the key factor in Plaintiff's retaliation claim.

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so."  <u>Watison v. Carter</u>, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009)).  Also protected by the First Amendment is the right to pursue civil rights litigation in federal court without retaliation.  <u>Silva v. Di Vittorio</u>, 658 F.3d 1090, 1104 (9th Cir. 2011).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005).

As an initial matter, Plaintiff is entitled to have his factual allegations taken as true and construed in the light most favorable to him, and he is entitled to be afforded the benefit of any doubt. <u>Nordstrom v. Ryan</u>, 762 F.3d 903, 908 (9th Cir. 2014); <u>Blaisdell v. Frappiea</u>, 729 F.3d 1237, 1241 (9th Cir. 2013).  Plaintiff has the right under the First Amendment to voice his complaints regarding his personal safety and to be free from retaliation in response.  Whether phrased as an "inmate grievance"

or "verbal complaint" the result is the same. According to the allegations in the second amended complaint, Defendant Johnson conducted the rules violation hearing for possession of contraband. Plaintiff claims he was wholly unaware of any contraband in his cell until well after the confiscation took place. Plaintiff contends his cellmate confessed to possession of the contraband and it would be illogical to find him guilty of "constructive possession" of such contraband. Plaintiff went on to explain to Johnson that he was being housed with incompatible cellmates to which Johnson responded "handle your business [and] if your['e] scared go S.N.Y." When Plaintiff received the final copy of the rules violation it was falsified in retaliation for Plaintiff exercising his rights under the First Amendment. Plaintiff takes particular objection to the statement that he stated, "It wasn't mine. It was his. No [sic] I tell all my cellies, if you have it, I don't want to see it." Contrary to Defendant's argument, this statement arguably insinuates that Plaintiff had some knowledge, even if indirectly, as to the potential contraband in his cell (to which Plaintiff vehemently denies).

The causation element of a First Amendment retaliation claim requires the inmate plaintiff to show that protected conduct was the substantial or motivating factor underlying the defendant's adverse action. Brodheim v. Cry, 584 F.3d at 1271. "Recognizing that the ultimate fact of retaliation for the exercise of a constitutionally protected right rarely can be supported with direct evidence of intent that can be pleaded in a complaint, [citation omitted], courts have found sufficient complaints that allege a chronology of events from which retaliation may be inferred." Murphy v. Lane, 833 F.2d 106, 108 (7th Cir. 1987) (quoting Benson v. Cady, 761 F.2d 335, 342 (7th Cir. 1985).

Contrary to Defendant's argument, the totality of the allegations in Plaintiff's second amended complaint are sufficient to establish a causal connection between Plaintiff's protected conduct and the alleged adverse actions from which a reasonable trier of fact could infer that Defendant Johnson's actions against him were retaliatory. Despite Defendant's assertion that Plaintiff's allegations are merely conclusory, the Court finds that Plaintiff has pled sufficient factual content as to give Defendant "fair notice of what the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555. As noted above, Plaintiff has alleged that Defendant Johnson subjected him to a false rules violation report in retaliation for exercising his rights under the First Amendment by voicing his complaints regarding his housing arrangements.

12

> The only harm necessary for a claim of retaliation is the chilling effect.
>
> A]n objective standard governs the chilling inquiry; a plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill or silence a person of ordinary firmness from future First Amendment activities.' [Citations omitted.]  To hold otherwise 'would be unjust' as it would 'allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity.' [Citation omitted.]

Brodheim, 584 F.3d at 1271.  "'[S]ince harm that is more than minimal will almost always have a chilling effect[, a]lleging harm and alleging the chilling effect would seem under the circumstances to be no more than a nicety."  Id. at 1270 (quoting Rhodes v. Robinson, 408 F.3d at 568 n.11).  Here, Plaintiff's allegations are sufficient because it can be inferred that being falsely found guilty of a rules violation report and/or falsifying documentation to be found guilty of a rules violation report would discourage an ordinary person from filing any further complaints.  The Court therefore finds that Plaintiff sufficiently pled a "chilling effect."

To the extent the Court's screening order was unclear, Plaintiff's retaliation claim is premised on the adverse actions taken against him by way of the rules violation for possession of contraband because he complained to Defendant Johnson about being housed with incompatible inmates.  Seeking redress from the government is protected by the First Amendment and the Court's rejects Defendant's argument that Plaintiff's retaliation claim lacks this requisite element.  Watison, 668 F.3d at 1114; Silva, 658 F.3d at 1104.

2.      Deliberate Indifference Claim Against Assistant Warden (John Doe)

Defendant argues that the claim against Assistant Warden should be dismissed because Plaintiff has not alleged direct participation in any violation.

Under section 1983, Plaintiff must prove that the defendants holding supervisory positions personally participated in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  There is no respondeat superior liability, and each defendant is only liable for his or her own misconduct.  Iqbal, at 1948-49.  A supervisor may be held liable for the constitutional violations of his or her subordinates only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989);

13

1  Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of

2  Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir.

3  1997).

4       The Eighth Amendment protects prisoners from inhumane methods of punishment and from

5  inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).

6  Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with

7  food, clothing, shelter, sanitation, medical care, and personal safety.  Farmer v. Brennan, 511 U.S.

8  825, 832-33 (1994).  Prison officials have a duty under the Eighth Amendment to protect prisoners

9  from violence at the hands of other prisoners because being violently assaulted in prison is simply not

10  part of the penalty that criminal offenders pay for their offenses against society.  Farmer, 511 U.S. at

11  833-34 (quotation marks omitted); Clem v. Lomeli, 566 F.3d 1177, 1181 (9th Cir. 2009); Hearns v.

12  Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).  However, prison officials are liable under the Eighth

13  Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of

14  serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official

15  acted or failed to act despite his knowledge of a substantial risk of serious harm.  Farmer, 511 U.S. at

16  834, 841; Clem, 566 F.3d at 1181; Hearns, 413 F.3d at 1040.  In addition, if failure to protect is

17  alleged, the defendant must have had a reasonable opportunity to intervene.  Orwat v. Maloney, 360

18  F.Supp.2d 146, 155 (D. Mass. 2005), citing Gaudreault v. Municipality of Salem, 923 F.2d 203, 207 at

19  n.3 (1st Cir. 1991).  Prison officials must provide prisoners with personal safety.  See Toussaint v.

20  McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986), abrogated in part on other grounds by Sandin v.

21  Conner, 515 U.S. 472 (1995).

22       As to Assistant Warden (identified only as John Doe), Plaintiff alleges that he spoke with the

23  Assistant Warden during yard and explained how lieutenant Johnson falsified the rules violation report

24  and recruited the defendants in a conspiracy to spread rumors to lead to an inmate being injured.  The

25  Assistant Warden told Plaintiff "there was nothing he could do and that [he] should apologize to the

26  Lt. and ask him nicely to modify his report."  The allegations preceding the claim against the Assistant

27  Warden alleged that prison officials were distributing the false rules violation in an effort to jeopardize

28  Plaintiff's safety.  Viewing the allegations as a whole, Plaintiff's complaint is sufficient to state a

cognizable claim against the Assistant Warden.   While Plaintiff cannot proceed on a claim of respondeat superior, a supervisor, such as Assistant Warden, may be liable if he knew of the violations and failed to act or prevent it or participated in such actions.   Here, based on Plaintiff's allegations the Assistant Warden was made aware of the spreading of false accusations and failed to prevent such conduct.   Accordingly, the motion to dismiss such claim should be denied.

     3.    <u>Deliberate Indifference Claim Against Defendants Chan and Sanchez</u>

     Defendants argue that Plaintiff's claims relating to housing with inmate Russ should be dismissed because his allegation that Russ had a "problem" with his religion is insufficient to support the conclusion that Plaintiff was at a substantial risk of serious harm due to that housing assignment.

     With regard to housing with inmate Russ, Plaintiff's states the following:

On 9-28-2013 correctional officer A. Sanchez escorted inmate Russ CDC number E-95111 to the Plaintiff's cell to initiate a cell compaction.  The plaintiff and Russ began conversing on compatibility and during the conversation the Plaintiff informed Russ, 'I'm Jewish.'

Russ replied in an aggressively loud response, 'I'm a Muslim' and continued yelling the three word over and over again with his fist balled.

The Plaintiff had a puzzled look on his face and simply said, 'look man all that ain't even necessary, just tell him we're incompatible.'

Russ replied, 'I've been down 20 plus years and I got to Board in six months, I ain't tellin[g] them shit they'll deny my parole for that write up.  You tell [th]em' in a loud and aggressive yelp.

The Plaintiff therefore addressed C.O. A. Sanchez, "man he's Muslim and apparently has a problem with my religion, I'm Jewish."

C.O. Sanchez responded, "your Black ass ain't no Jew, hell Blacks can't even be Jews haven't you ever heard of the Hamitic Curse."

The Plaintiff stated, "that racists propaganda!"

C.O. A. Sanchez said, "well regardless your['e] going to get wrote up [sic] and lose your['e] yard, canteen and personal property and get an extension on your SHU (hole) term.
The Plaintiff therefore agreed to sign the marriage chrono saying "I'll sign the c[h]rono then" when C.O. A. Sanchez handed the Plaintiff the form the Plaintiff wrote, "I'm not refusing a celly but I am refusing to accept responsibility for any violence that may occur.

As a result of ya'll placing a confirmed incompatible inmate in the cell," on the c[h]rono that Plaintiff also handed C.O. Sanchez an 22 request form and requested his receipt before given

the 1882 c[h]rono back to C.O. A. Sanchez.  (The request form requested a copy of the c[h]rono as evidence in case the Plaintiff was in fact written up).  The C.O. give the Plaintiff his copy and the Plaintiff submitted the c[h]rono over to him.

C.O. A. Sanchez transferred the two documents to Sgt. A. Chan and Chan responded formally on the request form, "don't worry the marriage c[h]rono will be evidence in your 115 hearing." On 10-10-2013 correctional officer A. Santos introduced himself as the assigned investigative employee (I.E.) assigned to the rules violation report logged ASE-13-09-018 and ASE-13-09-002 (018-delaying officer and refusing celly, and 002-fighting), and asked what task the Plaintiff wanted him to carry out in preparation of his defense?

The Plaintiff submitted a list of witnesses to be questioned with specific questions for each witness.  C.O. A. Santos scanned the document [and] directed the Plaintiff, "just plead guilty, you were caught fighting and you refused a celly."

The Plaintiff replied "Nah I want to present the mitigating factors to the committee in an attempt to get the mid or low disciplinary sanction."

Correctional officer A. Santos began arguing with himself steady yelling, "Just take the guilty plea."  No matter how calm the Plaintiff remained Santos continue[d] yelling at him trying to force him to "just plead guilty."  This went on for about an hour straight.

(ECF No. 14, at 16-17.)

Defendants argue that Plaintiff has failed to demonstrate that his housing with inmate Russ created "a substantial risk of serious harm."  However, a showing of deliberate indifference does not require a prisoner seeking "a remedy for unsafe conditions to await a tragic event [such as an] actua[l] assaul[t] before obtaining relief."  Farmer v. Brennan, 511 U.S. 825, 846 (1994) (citing Hellings v. McKinney, 509 U.S. 25, 33-34 (1993).)  Contrary to Defendants' arguments, Plaintiff has alleged sufficient facts, which taken as true, support a plausible inference that Defendants knew of and disregarded an excessive risk of potential violence between Plaintiff and inmate Russ.  Plaintiff's allegations support a plausible inference that due to the inmates' religious practices potential violence could result between the two of them.  Accordingly, Defendants' motion to dismiss this claim should be denied.

4.     Deliberate Indifference Claim Against Defendant O'Daniels

Defendant O'Daniels argues that Plaintiff has failed to state a cognizable claim for relief relating to his housing with inmate Dawson because he did not plausibly allege he was at any risk of

harm from the housing assignment.  Defendant argues specifically that Plaintiff alleged only that he was "incompatible" with Dawson, but failed to explain how or why that was the case.

Contrary to Defendant's argument, Plaintiff allegations, viewed as whole, are sufficient to state a plausible claim for failure to protect against Defendant O'Daniels.  In the second amended complaint, Plaintiff alleges that on November 7, 2013, Plaintiff and inmate Badelle were housed together and were compatible cellmates.  O'Daniels approached Plaintiff's cell to initiate a swap of cellmates. When Plaintiff asked why he was going to be housed with an incompatible cellmate, O'Daniels told inmate Badelle, "because you act like you['re] scared of this mother fucker.  We told you he's a peace [sic] of shit rat and S.N.Y. and thought you celled up with him to handle your business instead he's writing 602s for you and your['e] in there acting like best friends so now you'[re] on the shit list too."  Inmate Badelle replied, "so what I seen the paperwork and it doesn't make sense, it looks like you['re] trying to set the homie up and I'm not about to be apparat of that bull-shit."  After threatening to take all of inmate Badelle's property, Plaintiff and Badelle signed the chrono as directed.   As soon as Plaintiff was uncuffed he attacked inmate Dawson without allowing him to be uncuffed.  During this same time, inmate Badelle was engaged in a physical alternation with his cellmate Montgomery.  (ECF No. 14, at 21-22.)

Plaintiff's allegations support a plausible inference that he was intentionally housed with an incompatible cellmate in order to incite physical violence between the two of them.   Plaintiff's allegations, taken as true, support a reasonable inference that Defendant O'Daniels knew of and disregarded an excessive risk of harm to Plaintiff's physical safety.  Although Plaintiff admits he was the initial aggressor, such fact does not negate at the pleading stage, that Defendant O'Daniels placed Plaintiff in substantial risk of serious harm.  Indeed, at the pleading stage, Plaintiff's claim need only be plausible, not "likely to succeed" or "probable."  Whether Plaintiff will actually be able to prove the factual circumstances he alleges is a question that can be answered only after discovery.  Plaintiff has alleged enough to get past the pleading stage, and Defendant O'Daniel's motion to dismiss should be denied.

///

///

17

5.      Deliberate Indifference Claim Against Defendant Alva

Defendant Alva argues that Plaintiff fails to state a cognizable claim against him because there is no allegation that Alva had anything to do with any of his housing assignments.

With respect to Defendant Alva, the facts present in the second amended complaint allege that after his rules violation hearing by Johnson, officers Johnson, Ybarra, Chan, O'Daniels, Franco, Alva and Esqueda "started telling all of the inmates house[d] in build E-1 that the plaintiff 'was a snitch and need to get dealt with.'"  (ECF No. 14, at 11.)  Defendants Johnson, Chan, Franco, O'Daniels, Alva, Esqueda, and Santos began to tell all the inmates to "deal with" Plaintiff "because he's a snitch and he has the paperwork in his cell.  He snitched on his old cell Trotter on a possession charge, ask to see his 115 final copy logged number C-13-05004."  (Id. at 12.)  As a result other inmates, including inmate Baker, requested to view Plaintiff's rules violation report.  Throughout the ordeal, Plaintiff and inmate Baker continually requested to be separated.   Baker continued to say there is simply too much controversy surrounding the Plaintiff and it was making him look bad because the two were rival gang members and the correctional officers were reporting that Plaintiff was a snitch.  Correctional officers would instruct inmate Baker to handle his business and take Plaintiff down.  On September 11, 2013, Plaintiff and inmate Baker had a physical altercation inside the cell, and Plaintiff suffered permanent injuries to his lower back, neck, black eye, and an asthma attack due to the responding officers' use of pepper spray to break up the fight.

In his opposition, Plaintiff confirms that Defendant Alva was involved in the initial and subsequent housing of Plaintiff with inmate Baker.   As previously stated, Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  See Ashcroft v. Iqbal, 556 U.S. 662, 678-679 (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim…is and the grounds upon which it rests."  Bell v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).  Based on the facts in the second amended complaint, it is reasonable to infer that Defendant Alva knew of a substantial risk of serious harm by

18

1   housing Plaintiff with inmate Baker, and Plaintiff's allegations meet the notice requirements of Rule

2   8(a).  Therefore, the motion to dismiss this claim should be denied.

3        5.    <u>Due Process Claims</u>

4          Defendant Santos argues that the due process claim against him should be dismissed because

5   Plaintiff refused Santos's assignment as an investigative employee.  Defendants argue that Plaintiff

6   has failed to demonstrate a liberty interest that may have been implicated by the guilty finding and his

7   due process claim fails.  Defendants further argue that Plaintiff fails to set forth allegations from which

8   it can be inferred that prison officials deprived him of necessary or relevant witnesses.

9          "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of

10  rights due a defendant in such proceedings do not apply."  <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556,

11  (1974).  With respect to prison disciplinary proceedings, the minimum procedural requirements that

12  must be met are:  (1) written notice of the charges; (2) at least 24 hours between the time the prisoner

13  receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a

14  written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary

15  action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so

16  would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to

17  the prisoner where the prisoner is illiterate or the issues presented are legally complex.  <u>Id.</u> at 563-71.

18  As long as the five minimum <u>Wolff</u> requirements are met, due process has been satisfied.  <u>Walker v.</u>

19  <u>Sumner</u>, 14 F.3d 1415, 1420 (9th Cir. 1994), <u>abrogated on other grounds by</u> <u>Sandin v. Connor</u>, 515

20  U.S. 472 (1995).  In addition "[s]ome evidence" must support the decision of the hearing officer.

21  <u>Superintendent v. Hill</u>, 472 U.S. 445, 455 (1985).  The standard is not particularly stringent and the

22  relevant inquiry is whether "there is *any* evidence in the record that could support the conclusion

23  reached . . . ."  <u>Id.</u> at 455-56 (emphasis added).

24         To the extent the Court's screening order incorrectly interpreted Plaintiff's claim as a denial of

25  the right to present witnesses at his rules violation hearings, Plaintiff has now clarified by way of

26  Plaintiff's opposition that his claim is based on Santos's failure to conduct a proper investigation by

27  interviewing witnesses and preserving and presenting certain documentary evidence.  (ECF No. 43,

28  Opp'n at 26.)  However, the Court's interpretation of Plaintiff's claim does not change the ultimate

finding that Plaintiff states a cognizable due process violation.  Under <u>Wolff</u>, Plaintiff has a right to prepare and present his defense, which based on the allegations in the second amended complaint he was denied.  <u>Wolff</u>, 418 U.S. at 566 ("the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"); <u>Id.</u> at 570 ("[w]here an illiterate inmate is involved … or where the complexity of the issues makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or … to have adequate substitute aid … from the staff or from a sufficiently competent inmate designated by the staff.")  Based on the allegations in the second amended complaint, it is clear that Defendant Santos played a role as the initial investigative employee in relation to his rules violation reports, and the ultimate determination of the precise role in which he played cannot be resolved at the pleading stage.  Defendants may argue that any procedural deficiencies did not violate <u>Wolff</u> or impose atypical and significant hardship on Plaintiff after the record is developed in this case by way of motion for summary judgment.  Accordingly, the motion to dismiss the due process claim against Defendant Santos should be denied.

   6. <u>Requests for Injunctive Relief</u>

   Defendants argue that Plaintiff's requests for injunctive relief should be dismissed.

   Federal courts are courts of limited jurisdiction and in considering a request for preliminary injunctive relief, the Court is bound by the requirement that as a preliminary matter, it have before it an actual case or controversy.  <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95 102 (1983); <u>Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.</u>, 454 U.S. 464, 471 (1982).  If the Court does not have an actual case or controversy before it, it has no power to hear the matter in question.  <u>Id.</u>  Requests for prospective relief are further limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act, which requires that the Court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."

   "'A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not

before the court.'"  Price v. City of Stockton, 390 F.3d 1105, 1117 (9th Cir. 2004).   As part of his request for relief, Plaintiff seeks the Court to order CDCR to modify its records, implement policy changes statewide, and rewrite state regulations governing CDCR's disciplinary process.  (ECF No. 14 at 33:14-34:13.)   Defendants, who are various officials at SATF, do not have the authority to implement these types of relief.  Accordingly, Defendants' motion to dismiss Plaintiff's requests for injunctive relief should be granted.

> 6.   Official Capacity Claims

Defendants argue that Plaintiff's official-capacity claims for damages should be dismissed upon dismissal of the requests for injunctive relief.  Defendants are correct.

The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities."  Aholelel v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007).  Plaintiff's official capacity claims are dismissed and this action shall proceed on the individual capacity claims.

As the Court has recommended dismissal of Plaintiff's requests for injunctive relief, only monetary damages remain at issue.  Because Plaintiff cannot proceed on official-capacity claims for monetary damages, all official capacity claims should be dismissed from the action.

> **F.   Plaintiff's Motion to Amend and Supplement Complaint**

On March 30, 2016, Plaintiff filed a motion to file a supplement and amend the operative second amended complaint.   Defendants filed an opposition on April 12, 2016.

Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served.  Otherwise, a party may amend only by leave of the court or by written consent of the adverse party, and leave shall be freely given when justice so requires.  Fed. R. Civ. P. 15(a).

Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.'" AmerisourceBergen Corp. v. Dialysis West, Inc., 465 F.3d 946, 951 (9th Cir. 2006) (quoting Fed. R. Civ. P. 15(a)).  However, courts "need not grant leave to amend where the amendment:  (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in the litigation; or (4) is futile."  AmerisourceBergen Corp., 465 F.3d at 951.  Relevant to the futility factor, a plaintiff may not

bring unrelated claims against unrelated parties in a single action.  Fed. R. Civ. P. 18(a), 20(a)(2); Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

Under Federal Rule of Civil Procedure 15 a party may supplement a pleading:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or even that happened after the date of the pleading to be supplemented.  The court may permit supplementation even though the original pleading is defective in stating a claim or defense.  The court may order that the opposing party plead to the supplemental pleading within a specified time.

Fed. R. Civ. P. 15(d).

A plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact.  Fed. R. Civ. P. 20(a)(2); Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997); Desert Empire Bank v. Insurance Co. of North America, 623 F.3d 1371, 1375 (9th Cir. 1980).  Here, Plaintiff seeks to amend and/or supplement the second amended complaint to add allegations occurring in 2015, which took place at California State Prison-Corcoran.  Although the claim may involve the failure to protect, the events giving rise to Plaintiff's claims against the additional unidentified officials are separate and distinct from the defendants and events in the second amended complaint, as they occurred during different time periods at different prisons.  As such, the claims do not appear related within the meaning of Rule 20, and they may not be properly joined in this one action.

Plaintiff seeks leave to amend the complaint to cure the deficiencies under Rule 20 (discussed below), and the Court finds that Plaintiff should be given the opportunity to do so.  Thus, Plaintiff's motion to amend the complaint should be granted to the extent Plaintiff can cure the deficiencies under Rule 20.  Although the Court may properly deny leave to amend if the proposed amendments are futile,   see, e.g., Woods v. City of San Diego, 678 F.3d 1075, 1082 (9th Cir. 2012); Silva v. Di Vittorio, 658 F.3d 1090, 1105-06 (9th Cir. 2011); Carrico v. City and County of San Francisco, 656 F.3d 1002, 1008 (9th Cir. 2011), amendment does not appear futile here as Plaintiff contends the Rule 20 defect can be cured by amendment. Accordingly, Plaintiff's motion seeking leave to amend should

22

Case 1:14-cv-01156-LJO-SAB   Document 52   Filed 07/15/16   Page 23 of 25

be granted as to the Rule 20 defect. However, to the extent Plaintiff seeks to amend as to alleged Does Eight and Ten, correctional officer Inegheje and nurse Mendivil, respectively, the Court did not find cognizable claims as to Does Eight and Ten, and such defendants were dismissed from the action. (ECF Nos. 15, 17.) Therefore, these claims do not relate to any cognizable claims for which this action is proceeding. In addition, to the extent Plaintiff seeks to amend the second amended complaint to cure the deficiencies identified in Defendants' motion to dismiss, the motion is moot because the undersigned is recommending Defendants' motion be denied for failure to state a cognizable claim.

### G.     Defendants' Motion for Severance and Dismissal of Misjoined Defendants

On February 9, 2016, Defendants filed a motion to sever claims and dismiss misjoined Doe Defendants. (ECF No. 31.) Plaintiff filed an opposition on June 2, 2016, and Defendants filed a reply on June 9, 2016. (ECF Nos. 44, 46.)

Defendants request that the Court sever Plaintiff's claim involving his medical treatment, "as it is based on different events, at a different institution, and does not involve common questions of law or fact. Defendants also request that the Court dismiss the misjoined Doe Defendants so that Plaintiff's claims against them may be prosecuted in a separate action.

As previously stated, Federal Rule of Civil Procedure 18(a) allows a plaintiff to add multiple claims to the lawsuit when they are against the same defendant. Federal Rule of Civil Procedure 20(a)(2) allows a plaintiff to join multiple defendants to a lawsuit where the right to relief arises out of the same "transaction, occurrence, or series of transactions" and "any question of law or fact common to all defendants will arise in the action." However, unrelated claims that involve different defendants must be brought in separate lawsuits. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). This rule is not only intended to avoid confusion that arises out of bloated lawsuits, but also to ensure that prisoners pay the required filing fees for their lawsuits and prevent prisoners from circumventing the three strikes rule under the Prison Litigation Reform Act. 28 U.S.C. § 1915(g).

As Defendants correctly summarize, Plaintiff alleges the following six claims which took place at the California Substance Abuse and Treatment Facility at Corcoran State Prison ("SATF"):

(1) a First Amendment claim for retaliation against Defendant Johnson, concerning a rules violation report (RVR) for marijuana possession after a hearing in August 2013;

23

(2) an Eighth Amendment deliberate-indifference claim against Defendants Alva, Chan, Esqueda, Franco, Johnson, O'Daniels, Santos, Ybarra, and the Assistant Warden (John Doe) for labeling Plaintiff a "snitch," shortly after the RVR hearing for marijuana possession;

(3) an Eighth Amendment deliberate-indifference claim against Defendants Franco and O'Daniels relating to Plaintiff's fighting with cellmate on or about September 11, 2013;

(4) an Eighth Amendment deliberate-indifference claim against Defendants Chan and Sanchez relating to Plaintiff's housing with inmate Russ on or about September 28, 2013;

(5) an Eighth Amendment claim against Defendant O'Daniels relating to Plaintiff's housing with cellmate Dawson on or about November 7, 2013;

(6) a due process claim against Defendants Santos, Esqueda, and Ybarra relating to procedural due process protections during the rules violation hearings for ASE-013-09-018 (refusing cellmate) and ASE-13-009-002 (fighting), sometime in September or October of 2013.

After the above-mentioned events took place at SATF, Plaintiff was transferred to California State Prison, Corcoran ("CSP"). Plaintiff alleges that Does Three, Four, Five and Six were employees at CSP, and his claim of deliberate indifference at CSP arose in 2014, after his transfer from SATF. That allegation appears to involve discreet events that are separate from the allegations against the Defendants employed at SATF. However, the Court has recommended that Plaintiff's motion to amend the complaint to cure the misjoinder under Rule 20 be granted, and Defendants' motion to sever and dismiss such claim should be denied, without prejudice.[4]

## III.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.      Defendants' motion to dismiss Plaintiff's request for injunctive relief and official-capacity claims for monetary damages be GRANTED; and

2.      Defendants' motion to dismiss certain claims for failure to state a cognizable claim for

---

[4] Federal Rule of Civil Procedure 21, provides that misjoinder is not a ground for dismissing an action, but the court may at any time, on just terms, add or drop a party.  Fed. R. Civ. P. 21.

1    relief be DENIED;

2    3.    Plaintiff's motion to amend and/or supplement the second amended complaint be

3    GRANTED to cure the Rule 20 defect only; and

4    4.    Defendants' motion to sever Plaintiff's medical claim against Defendants Does Three,

5    Four, Five and Six be DENIED, without prejudice.

6    These Findings and Recommendations will be submitted to the United States District Judge

7    assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days**

8    after being served with these Findings and Recommendations, the parties may file written objections

9    with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and

10   Recommendations."  The parties are advised that failure to file objections within the specified time

11   may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir.

12   2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

13

14   IT IS SO ORDERED.

15   Dated:   **July 15, 2016**

16                                                  UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28