# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERRY C. BLAIR,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CDCR, et al.,<br><br>　　　　　　Defendants. | Case No.: 1:14-cv-01156-LJO-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST THE ADMINISTRATIVE REMEDIES<br><br>[ECF No. 84] |

Plaintiff Perry C. Blair is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' exhaustion-related motion for summary judgment, filed February 22, 2018.

**I.**

**RELEVANT HISTORY**

This action is proceeding against Defendants Johnson, Ybarra, Alva, Chan, O'Daniels, Franco, Sanchez, Esqueda, Santa and Joe Doe (Assistant Warden) for deliberate indifference, against Defendants Santos, Esqueda, and Ybarra for a due process violation, and against Defendant Johnson for retaliation.

On August 30, 2017, Defendants filed an answer to the complaint. On September 1, 2017, the Court issued the discovery and scheduling order.

1

As previously stated, on February 22, 2018, Defendants filed an exhaustion-related motion for summary judgment. Plaintiff filed an opposition on April 2, 2018, and Defendants filed a reply on April 9, 2018.

## II.

## LEGAL STANDARD

### A. Statutory Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions." 42 U.S.C. § 1997e(a); see Ross v. Blake, __ U.S. __ 136 S.Ct. 1850 (June 6, 2016) ("An inmate need exhaust only such administrative remedies that are 'available.'"). Exhaustion is mandatory unless unavailable. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino, 747 F.3d at 1166. "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. Id.

///
///

**B.     Summary Judgment Standard**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172. If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Id. at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

### III.

### DISCUSSION

**A.     Description of CDCR's Administrative Remedy Process**

Plaintiff is a state prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), and CDCR has an administrative remedy process for inmate grievances. Cal. Code Regs. tit. 15, § 3084.1 (2014). Compliance with section 1997e(a) is mandatory and state

prisoners are required to exhaust CDCR's administrative remedy process prior to filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 85-86 (2006); Sapp v. Kimbrell, 623 F.3d 813, 818 (9th Cir. 2010). CDCR's administrative grievance process for non-medical appeals consists of three levels of review: (1) first level formal written appeals; (2) second level appeal to the Warden or designees; and (3) third level appeal to the Office of Appeals (OOA). Inmates are required to submit appeals on a standardized form (CDCR Form 602), attach necessary supporting documentation, and submit the appeal within thirty days of the disputed event. Cal. Code Regs. tit. 15, §§ 3084.2, 3084.3(a), 3084.8(b). The California Code of Regulations also requires the following:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question.

Cal. Code Regs. tit. 15, § 3084.2(a)(3).

**B.     Summary of Allegations Underlying Plaintiff's Constitutional Claims**

Sometime around January 2011, Plaintiff was escorted from the administrative segregation and assigned to share a cell with inmate Rousie. Plaintiff and Rousie were not compatible cellmates based on their rival gang affiliations.

Thereafter Plaintiff was locked in a three by two-foot shower from 8:00 a.m. to 6:00 p.m. and both Plaintiff and Rousie were threatened with confiscation of their personal property, placement in segregation, and issuance of a rules violation report. Based on the nature of the threats, Plaintiff and inmate Rousie agreed to be housed as cellmates, and Plaintiff believed Rousie would be placed in a different cell within one day.

On March 26, 2013, an inmate manufactured weapon was discovered inside the cell. As a result, Plaintiff and inmate Rousie were transferred to administrative segregation and eventually to the security housing unit at California Substance Abuse and Treatment Facility at Corcoran State Prison (SATF).

4

Sometime around December 2012, inmate Trotter was released from the hole and was re-assigned to a dwelling which was occupied by Plaintiff. Plaintiff informed the initiating officer that he and inmate Trotter were not compatible cellmates because they were from rival gangs. The initiating officer threatened both inmates with threats of confiscation of their personal property, rules violations, and placement in the hole for delaying a peace officer in their duties and refusing a housing assignment. In fear of the consequences both inmates decided to comply with the officer's demands on reliance that inmate Trotter would be relocated the following morning. However, six months thereafter, Plaintiff was still housed with inmate Trotter.

On May 14, 2013, Plaintiff was informed that marijuana was found in his cell on February 5, 2013, by officer Garza. Officer Garza issued a rules violation report to Plaintiff and inmate Trotter.

On June 7, 2013, officer M. Lefler conducted a search of Plaintiff and inmate Trotter's cell and an inmate manufactured weapon was discovered in the toilet drain. Plaintiff was at the door and tried to flush it down the toilet. Inmate Trotter denied knowledge of the weapon and Plaintiff admitted it belonged to him. Plaintiff stated that he intended to use it to defend himself against inmate Trotter. As a result of the incident, inmate Trotter and Plaintiff were separated.

While awaiting the administrative hearing, officer John Doe initiated a cell compaction with inmate Baker who is rival gang member. Both inmates informed the initiating officer of their rival gang status and the officer responded "if ya'll refuse to signed [sic] the chrono and be cellies your['e] going to forfeit 90 days, lo[se] 10 days of yard, 90 days of dayroom, 90 days of telephone, 90 days of canteen, 90 days of personal property and extension of your SHU-terms." With the reprisal in mind, the inmates decided to accept the living arrangements.

After a week after being placed in administrative segregation, inmate Trotter sent his investigative employee officer Garza to interview Plaintiff with regard to the possession of his weapon charge. Plaintiff informed Garza that "the weapon belonged to the Plaintiff and it was to be used on her client in the event that inmate Trotter tried to attack him, and that the weapon was never taken to yard."

On August 8, 2013, Lieutenant J. Johnson conducted the hearing on the rules violation report for possession of a controlled substance. Plaintiff presented evidence that the contraband belonged to

Plaintiff because it was discovered on the upper locker that was assigned to him. Plaintiff stated that he "didn't know anything about the drugs until 5-1-2013, when I was served with the notice of the 115 R.V.R. for drugs found on 2-5-2013. As far as I'm concerned the correctional officer could of planted it and C.O. Ibbs logic of it belong [sic] to me due to my bunk assignment that is discredited by your C.O. Welsh testimony."

Lieutenant Johnson opted to call C.O. Ibbs by way of a phone conference to ask "when you discovered the controlled substance in [building] 5, [cell] 101 on the upper locked was it out in the open where you didn't have to search for it because I'm hearing Blair's 115 for constructive possession?" The Plaintiff interjected with, "you mind [sic] as well just tell him exactly what to say if your['e] going to lead him like I'm some type of idiot." Johnson ended the telephone conversation with Ibbs and informed Plaintiff, "I'm finding you guilty possession-constructive possession." Plaintiff inquired as to the meaning of constructive possession. Johnson replied, "it means you had knowledge of and access to the contraband and therefore guilty of constructive possession." Plaintiff stated "that's crazy your telling me an inmate is guilty regardless of the circumstances. Even their cellie admits guilt as long as they were in the cell … I just testified that I had and still have no knowledge of the drugs, where they came from, or even when they were discovered and your own C.O. debunked your other C.O.'s logic and case, so now your using a loop hole which is basically indisputable as long as I occupied the cell with another inmate. That being the case I'm requesting single cell status because your rule places me in a position whether it is impossible to exist in a cell with another inmate without the threat of violence. Due to the fact that I'm therefore obligated to searched [sic] through all of my cellies personal property and dispose of whatever contraband they may possess. Just search through a cellie's personal property is a violation of cell conduct which will result in a physical altercation especially here on the high security facility on top of this your['e] instructing us to dispose of them contraband or run to the staff to be labeled a rat… That's a death sentence in here. It's already bad enough your['e] forcing us to house with rival gang members against our will." Lieutenant Johnson responded "your['e] not obligated to house with rival gang members, you can refuse incompatible cellies." Plaintiff informed Johnson, "yeah right, my last three cellies were incompatible and we tried to inform your staff of our rival gang status each time we were

6

threatened with disciplinary reprisal for refusing to accept each other as cellies. Johnson indicated that it was an exception and rarely happens. Plaintiff then informed Johnson that he and his current cellie were rival gang members. In response, Lieutenant Johnson insulted Plaintiff by telling him to just "handle your business [and] if your['e] scared go S.N.Y." Plaintiff replied "nah your['e] the bitch cuz [sic] back in the dayz [sic] C.O.s would actually fight the inmates instead of waiting until we're handcuffed to disrespect us. Now ya'll try to cause disruption amongst us so you can sit back and entertain yourselfs and write us up."

Immediately after the hearing, Lieutenant Johnson, Lieutenant Ybarra, Sergeant Chan, officer O'Daniels, officer Franco, officer Alva, and officer Esqueda started telling all of the inmates housed in building E-1 that Plaintiff "was a snitch and need to get [sic] dealt with."

On August 29, 2013, Plaintiff received the "falsified" final copy of the administrative hearing for the rules violation report log number C-13-05-004. In retaliation for Plaintiff utilizing the grievance process Lieutenant Johnson falsified the documents to quote Plaintiff as stating, "It wasn't mine. It was his. No I tell all my cellies, if you have it, I don't want to see it."

On top of falsifying the document he also directed his subordinates to inform the other inmates housed in E-1 "that the Plaintiff's paperwork was faulty and proves he's a snitch." Defendants Johnson, Chan, Franco, O'Daniels, Alva, Esqueda, and Santos began to tell all the inmates to "deal with" Plaintiff "because he's a snitch and he has the paperwork in his cell. He snitched on his old cell Trotter on a possession charge, ask to see his 115 final copy logged number C-13-05004." As a result other inmates requested to view Plaintiff's rules violation report.

On September 1, 2013, Plaintiff sent a letter to the warden. On September 20, 2013, and November 9, 2013, Plaintiff sent two more letters to the warden, Ombudsman Office and Office of Inspector General (OIG) explaining the corrupt action taken by prison officials in an attempt to have Plaintiff injured.

On December 3, 2013, the OIG replied to Plaintiff's complaint letter and after investigation found that Plaintiff's claim was unsubstantiated. Plaintiff also spoke with the warden at yard time, and he informed Plaintiff that "there was nothing he could do and that I should apologize to the Lt. and ask him nicely to modify the report."

Throughout the ordeal, Plaintiff and inmate Baker continually requested to be separated. Baker continued to say there is simply too much controversy surrounding the Plaintiff and it was making him look bad because the two were rival gang members and the correctional officers were reporting that Plaintiff was a snitch. Correctional officers would instruct inmate Baker to handle his business and take Plaintiff down.

On September 5, 2013, officers Franco and O'Daniels approached Plaintiff's cell claiming Baker was scheduled to have a conference with his psychologist. As a result, both Plaintiff and Baker were handcuffed, and Plaintiff was advised that he was being moved because Baker was passing love letters to his psychologist claiming to be from Plaintiff.

After Plaintiff and inmate Baker advised officer O'Daniels of the need to be separated, O'Daniels stated "stop acting like bitches and handle your business, that's why ya'll were moved over here where can't nobody hear the screams."

On September 11, 2013, Plaintiff and inmate Baker had a physical altercation inside the cell, and Plaintiff suffered permanent injuries to his lower back, neck, black eye, and an asthma attack due to the responding officers' use of pepper spray to break up the fight.

Plaintiff continuously requested a back brace, cane, and M.R.I. to diagnose and treat his injuries due to the severe pain he was suffering which caused him to collapse without notice. Plaintiff's calls for "man down" were ignored by correctional officers.

On September 28, 2013, officer A. Sanchez escorted inmate Russ to the Plaintiff's cell to initiate a cell compaction. Plaintiff and inmate Russ described that they were not compatible because Plaintiff is "Jewish" and inmate Russ is "Muslim." Officer Sanchez threatened disciplinary action for refusing to cell with inmate Russ, and officer Chan approved the action.

On October 10, 2013, officer Santos introduced himself as the Investigative Employee (IE) assigned to the rules violation report log numbers ASE-13-09-018 (delaying officer and refusing a cellmate) and ASE-13-09-002 (fighting), and asked Plaintiff "what task the Plaintiff wanted him to carry out in preparation of his defense?" Plaintiff submitted a list of witnesses to be questioned and Santos directed Plaintiff "just plead guilty, you were caught fighting and you refused a celly." Plaintiff replied, "nah I want to present the mitigating factors to the committee in an attempt to get the

8

mid or low disciplinary sanction." Santos began arguing with Plaintiff yelling, "just take the guilty plea." No matter how calm the Plaintiff remained Santos continued to yell at him trying to force him to "just plead guilty."

On October 11, 2013, officer Esqueda introduced himself as the working IE, and after opening the file stated, "This is odd, I've never seen this before. Lt. Ybarra is say [sic] I can't question these witnesses for you. Now did he even know what you wanted to ask them." Officer Esqueda asked Lieutenant Ybarra about the witness interviews and Ybarra stated "it looks as if your line of questions are in preparation of a lawsuit. Your cellie already filed a government claims and he's not about to assist ya'll or help build your case."

Officer Esqueda spoke with Lieutenant Ybarra again and then stated "I will question all your witnesses and type this." However, Esqueda never questioned Plaintiff's inmate or staff witnesses and only typed the Plaintiff's affidavit, and purposely falsified in writing that Plaintiff was "sensitive needs yard status."

During the two rules violation hearings conducted by Lieutenant Ybarra, he refused to allow Plaintiff to speak in his defense.

On November 7, 2013, Plaintiff and inmate Badelle were housed together and were compatible cellmates. However, officer O'Daniels approached Plaintiff's cell to initiate a swap of cellmates. After threatening to take all of inmate Badelle's property, Plaintiff and Badelle signed the chrono as directed and as soon as Plaintiff was uncuffed he attacked inmate Dawson.

C. **Plaintiff's Motion Under Rule 56(d) for Additional Discovery**

In his opposition, Plaintiff contends that a continuance is necessary under Federal Rule of Civil Procedure 56(d) because further discovery is necessary to oppose Defendants' motion.

Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). In seeking relief under Rule 56(d), Plaintiff bears the burden of specifically identifying relevant information, where there is some basis for believing that the information actually exists, and demonstrating that the evidence sought actually

exists and that it would prevent summary judgment. Blough v. Holland Realty, Inc., 574 F.3d 1084, 1091 n.5 (9th Cir. 2009) (quotation marks and citation omitted); Getz v. Boeing Co., 654 F.3d 852, 867-868 (9th Cir. 2011); Tatum v. City and County of San Francisco, 441 F.3d 1090, 1100-1101 (9th Cir. 2006).

Plaintiff contends that the following documentation is necessary: (1) administrative appeals that he has filed; (2) transcripts of Plaintiff's deposition; and (3) disciplinary records for all Defendants. Plaintiff argues that the administrative appeals located in his central file will prove when each of the appeals was "disposed of after the appeals office answered them." (Pl.'s Opp'n at 17:1-4, ECF No. 90.)

As an initial matter, on April 25, 2018, the Court denied Plaintiff's motion to compel discovery. (ECF No. 93.) Further, Defendants have attached a copy of the appeals at issue in the instant motion which was served on Plaintiff. (ECF No. 84.) Moreover, Defendants submit that the relevant appeals were either gathered from: (1) Plaintiff's central file; or (2) discovery received from Plaintiff. (Ehlenbach Decl. ¶¶ 4-6, Exs. B-D, ECF No. 84-6.) In addition, Plaintiff acknowledges that he has had an opportunity to review his central file. (Pl.'s Decl. in Opp'n at ¶ 23, ECF No. 90.) Although Plaintiff contends that certain appeals were destroyed and/or not processed, that is an issue to be addressed at the evidentiary hearing, for the reasons explained below.

With regard to Plaintiff's request for the disciplinary records of Defendants, such request is purely speculative as Plaintiff submits that they "may reveal a history of disposing of administrative complaints. (Pl.'s Opp'n at 17:5-8, ECF No. 90.) Plaintiff's request must be denied because he has failed to demonstrate that such disciplinary records even exist or would prevent summary judgment. See, e.g., Mitchell v. City of Tukwilla, Case No. C12-238 RSL, 2012 WL 4369187, at *2 (W.D. Wash. Sept. 24, 2012) (denying Rule 56(d) request because topic of further discovery was "only a broad fishing expedition"); Ontiveros v. Kernan, No. CIV S-06-0233-LKK-CMK P, 2007 WL 2894300, at *1 (E.D. Cal. Sept. 28, 2017) (denying request for continuance based on allegation that further discovery would reveal widespread "document tampering" at plaintiff's prison).

Lastly, with regard to Plaintiff's request for a copy of the deposition transcript, Plaintiff fails to identify any specific facts in the deposition transcript which preclude summary judgment. See, e.g.,

10

Tatum v. City & Cnty of San Francisco, 441 F.3d at 1100 (denying Rule 56(d) request where plaintiff proposed continuance until he had received deposition transcript). The portions cited and relied on in Defendants' motion were served with the motion, and Plaintiff fails to identify which facts in those transcripts are "completely false" or taken "out of context." (Ehlenbach Decl. ¶ 3, Ex. A, ECF No. 84-6.) In addition, Plaintiff is not entitled to a free copy of his deposition transcript. See Boston v. Garcia, No. 2:10-cv-1782 KJM DAD, 2013 WL 1165062 at *2 (E.D. Cal. Mar. 20, 2013) (denying plaintiff's request for a court order directing the defendant to provide him with a copy of his deposition transcript). Furthermore, Defendants submit a complete copy to the Court for review. (ECF No. 85.) Accordingly, Plaintiff's Rule 56(d) request to postpone ruling on Defendants' motion for summary judgment should be denied.

### D. Statement of Undisputed Facts

1. During the time relevant to his claims against Defendants Alva, Chan, Esqueda, Franco, Johnson, O'Daniels, Sanchez, Santos, and Ybarra, Plaintiff Blair was a state inmate incarcerated at Substance Abuse Treatment Facility and State Prison, Corcoran (SATF). (Sec. Amd. Compl., ECF No. 14 at 7-9.)[1]

2. Defendants Alva, Chan, Esqueda, Franco, Johnson, O'Daniels, Sanchez, Santos and Ybarra were employed at SATF at all times relevant to Plaintiff's claims. (ECF No. 14 at 7-9.)

3. All CDCR institutions, including SATF, have an administrative grievance process that allows inmates to appeal policies, decisions, or actions that have a material adverse effect upon an inmates' health, safety, or welfare. (Voong Decl. at ¶ 2; Zamora Decl. at ¶¶ 2-4.)

4. At all relevant times, the Inmate Appeals Office at SATF received, reviewed, and tracked all non-medical inmate appeals submitted for a first and second level of review concerning events at SATF. (Zamora Decl. at ¶ 2.)

---

[1] All references to pagination of specific court documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

5. At all relevant times, CDCR utilized a program called the Inmate Appeals Tracking System (IATS) to electronically log and track non-medical appeals through all levels of review. (Voong Decl. at ¶ 4; Zamora Decl. at ¶¶ 2-4.)

6. Appeals accepted at SATF receive a log number in the institution's IATS (IATS I & II). (Zamora Decl. at ¶¶ 4-5.)

7. The Office of Appeals (OOA) receives, reviews, and maintains inmates' non-medical appeals accepted at the third and final level of review. (Voong Decl. at ¶ 3.)

8. OOA keeps an electronic record of each non-medical appeal that has proceeded to the third and final level of review. When OOA receives an appeal, it is assigned a tracking number in IATS (IATS III), whether it is screened out or accepted. (Voong Decl. at ¶¶ 3-4.)

9. At all relevant times, an inmate's appeal was required to proceed through the third level of review to exhaust administrative remedies. (Voong Decl. at ¶ 3.)

10. A cancellation or rejection decision does not exhaust administrative remedies. (Voong Decl. at ¶ 5.)

11. Plaintiff's complaint in this matter was filed on July 24, 2014. (Compl., ECF No. 1.)

12. Between the time of his incarceration and December 21, 2015, Plaintiff had one non-medical appeal accepted and adjudicated at the third level of review. (Voong Decl. at ¶ 7.)

13. Between the time of his incarceration and December 21, 2015, OOA did not accept any appeals from Plaintiff concerning events at SATF. (Voong Decl. at ¶ 10 & Ex. A.)

14. Plaintiff submitted appeal SATF-X-13-03692 to the SATF Inmate Appeals Office and received a response at the second level of review. (Zamora Decl. at ¶ 8 & Ex. B; Ex. B to Ehlenbach Decl. at 011-012.)

15. Appeal SATF-X-13-03692 concerns allegations against Lieutenant J. Johnson and relates to the hearing on Rules Violation Report (RVR) No. C-13-05-004, issued for the act of possession of a controlled substance, which was adjudicated on August 8, 2013. (Zamora Decl. at ¶ 8 & Ex. B to Zamora Decl.)

16. In appeal SATF-X_13-03692, Plaintiff claimed that Lieutenant Johnson misquoted him, and requested that the "misquotes and inaccuracies" on the "final copy of the 115" be corrected. (Zamora Decl. at ¶ 8 & Ex. B to Zamora Decl.; Ex. C to Ehlenbach Decl.)

17. Appeal SATF-X-13-03692 is the only grievance that Blair submitted regarding allegations against Defendant Johnson. (Pl. Dep., Ex. A to Ehlenbach Decl., at 90:18-91:15; Responses to Johnson's First Set Interrogatories, Ex. E to Ehlenbach Decl. at 001-005.)

18. Appeal SATF-X-13-03692 does not name Defendants Alva, Chan, Esqueda, Franco, O'Daniels, Sanchez, Santos, or Ybarra. (Ex. B to Zamora Decl.)

19. Appeal SATF-X-13-03692 was rejected at the third level of review on or about May 6, 2014, because supporting documents were not attached. (Voong Decl. at ¶ 9 & Ex. A to Voong Decl.)

20. Plaintiff submitted appeal SATF-X-13-04755 to the SATF Inmate Appeals Office and received a response at the second level of review. (Zamora Decl. at ¶ 9 & Ex. C to Zamora Decl.; Ex. B to Ehlenbach Decl. at 006-009; Ex. D to Ehlenbach Decl.)

21. Appeal SATF-X-13-04755 is the only appeal that Plaintiff submitted against Lieutenant Ybarra. (Pl. Dep. at 94:8-11; Ex. A to Ehlenbach Decl.)

22. Appeal SATF-X-13-04755 was rejected at the third level of review on or about February 6, 2014, because supporting documents were not attached. (Voong Decl., at ¶ 8 & Ex. A to Voong Decl.; Ex. B to Ehlenbach Decl. at 001 (rejection notice).)

23. Appeal SATF-X-13-04755, the only appeal Plaintiff claims to have submitted against Defendants Chan and Sanchez, does not involve allegations that Chan and Sanchez knew he was incompatible with inmate Russ. (Pl. Dep. at 97:18-21, Ex. A to Ehlenbach Decl. (stating that Plaintiff submitted only one grievance regarding Officer Sanchez); Ex. C to Zamora Decl. (relevant grievance); Ex. E. to Ehlenbach Decl. at 021-025 (stating that Plaintiff only submitted one grievance regarding Sergeant Chan).)

**D.     Analysis of Defendants' Motion**

Defendants move for partial summary judgment and argue that the following claims are unexhausted: (1) the Eighth Amendment claim about being labeled a "snitch," as to Defendants Alva, Chan, Esqueda, Johnson, Sanchez, Santos, and Ybarra; (2) the claim against Defendant Alva relating

13

to housing with inmate Baker; (3) the Eighth Amendment claim against Defendants Chan and Sanchez regarding housing with inmate Russ; and (4) a portion of the due process claims against Defendant Ybarra.

In opposition, Plaintiff argues that Defendants O'Daniels, Franco and Ybarra engaged in a pattern of destroying appeals.

In response, Defendants argue that Plaintiff does not dispute that he failed to exhaust the administrative remedies regarding Defendants Alva, Chan, Esqueda, Johnson, Sanchez, Santos and Ybarra on his Eighth Amendment claim regarding being labeled a "snitch." Defendants therefore request that Court grant summary judgment as appropriate, and set the issue of exhaustion as to the remainder of the claims for an evidentiary hearing, where needed.

Defendants submit evidence that Plaintiff submitted inmate appeal numbers SATF-X-13-03692 and SATF-X-13-04755. (Zamora Decl. Exc. B-C; Ehlenbach Decl. Exs. C-D; Citations.) In appeal number SATF-X-13-03692, Plaintiff alleged that Defendant Johnson misquoted him in the final copy of the RVR C-13-05-004. (Zamora Decl. at ¶ 8 & Ex. B; Ehlenbach Decl. Ex. C.) RVR C-13-05-004 was issued for possession of a controlled substance and was adjudicated in August of 2013. (Zamora Decl. at ¶ 8 & Ex. B.) Plaintiff did not name Defendants Alva, Chan, Esqueda, Franco, O'Daniels, Sanchez, Santos or Ybarra in appeal number SATF-X-13-03692. (Zamora Decl. Ex. B.) This appeal was rejected at the third level of review on or about May 6, 2014, because supporting documents were not attached. (Voong Decl. at ¶ 9 & Ex. A.)

In appeal number SATF-X-13-04755, Plaintiff alleged that he was "unsatisfied with the misconduct of Lieutenant Ybarra in performing his duties as the hearing chairperson with regards to the 115 logged # 13-09-018." (Zamora Decl. at ¶ 9 & Ex. C; Ehlenbach Decl. Ex. D.) Plaintiff also claimed that he ordered officer Esqueda not to investigate, question, or document witnesses. (Id.) Plaintiff received a second level response which addressed allegations against Lieutenant Ybarra only, in relation to RVR ASE-13-07-018, and did not address any other issues with any other RVR. (Zamora Decl. at¶ 10 & Ex. C.)

The Court will address each of Plaintiff's claims that Defendants move for dismissal separately.

14

1. Eighth Amendment Claim Regarding Labeling a Snitch

Plaintiff contends that after the August 8, 2013, hearing on his rules violation report, Defendants Alva, Chan, Esqueda, Franco, Johnson, O'Daniels, Sanchez, Santos and Ybarra told other inmates housed in building E-1 that Plaintiff "was a snitch" and needed "to get dealt with. (ECF No. 14 at 16:23-26.) Defendants Alva, Chan, Esqueda, Johnson, Sanchez, Santos and Ybarra contend this claim is not exhausted as to them. Defendants Franco and O'Daniels do not move for summary judgment on this claim.

**a. Defendants Sanchez and Chan**

With regard to Defendants Sanchez and Chan, it is undisputed that Plaintiff did not exhaust the administrative remedies. Plaintiff testified at his deposition that appeal log number SATF-X-13-04755 was the only grievance filed against Defendants Sanchez and Chan. (Ehlenbach Decl. ¶ 3, Ex. A at 95:5-8; 97:18-21, ECF No. 84-7.) However, that appeal did not involve Plaintiff's claim that Defendants Sanchez and Chan told other inmates he was a snitch. Accordingly, the claims against Defendants Sanchez and Chan in this regard should be dismissed.

**b. Defendants Alva, Johnson, Ybarra, Esqueda and Santos**

It is undisputed that Plaintiff failed to exhaust the administrative remedies with respect to Defendants Alva, Esqueda, Johnson, Santos and Ybarra for his Eighth Amendment claim about being labeled a "snitch."

Plaintiff contends that he submitted an appeal regarding Defendants O'Daniels and Franco for calling him a "snitch." (Ehlenbach Decl. Ex. E at 006-015 [Supplemental Responses to Franco's and O'Daniels's Interrogatories), 040-43 [unnumbered grievances]; Zamora Decl., ¶¶ 11-14 & Ex. A.) Plaintiff submits that he filed an appeal against Defendants O'Daniels and Franco for calling him a snitch, but it was never answered. (Pl.'s Opp'n at 12; Pl.'s Decl. at 20; Ehlenbach Decl. Ex. E at 040-43.) Plaintiff further submits that on October 28, 2013, he filed another appeal for the failure to respond to the initial appeal, but it was also not answered. Then, on November 8, 2013, Plaintiff filed a CDCR Form 22 request detailing O'Daniels and Franco's misconduct. (Pl.'s Opp'n at 12.) On November 14, 2013, Plaintiff filed an administrative appeal detailing O'Daniels and Franco's misconduct in facilitating fights between himself and inmate Dawson and their continued labeling of

15

Plaintiff as a snitch, but he never received a response. (Pl.'s Opp'n at 12-13.) Plaintiff filed a failure to respond appeal on December 13, 2013 requesting the appeals office to respond to the November 14, 2013, appeal but it was never answered. (Id. at 13.)

Plaintiff declares that on September 5, 2013, "Defendants O'Daniels and Franco informed me and Baker 'We would not be separated until we handled our business, the order came from his Lt., because I had disrespected their Lt. and they were going to continue to trash my paperwork—won't any of it make it out of E-1." (Pl.'s Decl. at 24:12-16, ECF No. 90.) Plaintiff further declares that on November 7, 2013, Defendant O'Daniels told him "I had to fight inmate Dawson because of the paperwork I keep filing and because I keep disrespecting his Lt., that I can complaint all I want because my 602 are not making it past the trash can." (Id. at 24:17-23.)

Based on the evidence presented, it is undisputed that Plaintiff did not submit an appeal regarding Plaintiff's Eighth Amendment claim against Defendants Alva, Esqueda, Johnson, Santos and Ybarra for labeling him a snitch in front of other inmates.

2. <u>Eighth Amendment Claim Against Alva for Housing with Inmate Baker</u>

Defendants initially argue that Plaintiff claims to have submitted an appeal regarding allegations that Defendants O'Daniels and Franco improperly housed him with inmate Baker. (Ehlenbach Decl. Ex. E at 040-043 [unnumbered grievances]; Zamora Decl. at ¶¶ 12-13; Voong Decl. at ¶ 10.) Defendants further argue that Plaintiff did not submit any grievance regarding the conduct of Defendant Alva, with respect to housing with inmate Baker. (Pl.'s Dep. at 94:12-17; Ehlenbach Decl. Ex. E at 016-020 [Supplemental Responses to Alva's Interrogatories], 040-047 [copies of grievances allegedly submitted].)

In his opposition, Plaintiff contends that he filed an appeal against Defendant Alva within days of being compelled to house with inmate Baker, but the appeals office never replied to it. (Pl.'s Opp'n at 4, ECF No. 90.) Plaintiff submits that he cannot produce a copy of the appeal because it is in the possession of prison staff and will be issued to him in the near future. (Id.) Plaintiff's contentions are consistent with his deposition testimony in response to whether he had any grievance regarding the conduct of Defendant Alva stating, "I have one, but I don't know where it is. No, I don't have one. (Pl.'s Dep. at 94:16-17.)

Because a dispute of fact exists whether Plaintiff filed an inmate appeal with regard to his claim against Defendant Alva, Defendants' motion to summary judgment should be denied, subject to an evidentiary hearing.

### 3. Eighth Amendment Claim Against Defendants Chan and Sanchez Regarding Housing with Inmate Russ

Defendants argue that Plaintiff did not submit an appeal regarding his allegations that Defendants Chan and Sanchez knew he was incompatible with inmate Russ.

Plaintiff claims to have submitted one appeal-SATF-X-13-04755- against Defendants Chan and Sanchez. (Zamora Decl. at ¶ 9 & Ex. C; Ehlenbach Decl. Ex. B at 006-009 & Ex. D; Pl.'s Dep at 97:18-21; Ehlenbach Decl. Ex. A & Ex. E at 021-025.) However, this appeal did not mention any action taken by Chan or Sanchez in failing to protect Plaintiff from inmate Russ. (Id.) Accordingly, this appeal cannot serve to exhaust the administrative remedies as to the failure to protect claim against Defendants Chan and Sanchez, and Defendants' motion for summary judgment should be granted.

### 4. Due Process Claim Against Defendant Ybarra, in Part

Plaintiff brings due process claims relating to the investigation and hearing regarding two RVRs that he was issued in 2012—RVR ASE-13-09-018 (delaying a peace officer by refusing assigned housing) and RVR ASE-13-09-002 (fighting). On October 10, 2013, Defendant Santos introduced himself as the investigative employee assigned to the RVRs. (ECF No. 14 at 22:11-15.) Plaintiff claims that Santos told him to plead guilty, and Plaintiff refused Santos's assignment as investigative employee. (Id. at 22:20-23:6.) Defendant Esqueda was assigned as investigative employee, and he refused to question Plaintiff's witnesses. Defendant Ybarra conducted the hearing, and Plaintiff claims he was not allowed to speak in his defense. (Id. at 25:9-26:10.)

As previously stated, in appeal number SATF-X-13-04755, Plaintiff alleged that he was "unsatisfied with the misconduct of Lieutenant Ybarra in performing his duties as the hearing chairperson with regards to the 115 logged # 13-09-018." (Zamora Decl. at ¶ 9 & Ex. C; Ehlenbach Decl. Ex. D.) Plaintiff also claimed that he ordered officer Esqueda not to investigate, question, or document witnesses. (Id.) Plaintiff received a second level response which addressed allegations

against Lieutenant Ybarra only, in relation to RVR ASE-13-07-018, and did not address any other issues with any other RVR. (Zamora Decl. at ¶ 10 & Ex. C.)

Plaintiff submitted a different copy of appeal number SATF-X-13-04755 in response to Defendants' discovery requests, which references a "RVR ASE-13-09-002" added on its first page. Defendants submit this altered copy of the appeal did not state what was improper about the hearing on that RVR. (Ehlenbach Decl., Ex. B at 002-004 & Ex. E at 052-054.) In addition, the SATF appeals coordinator does not possess a copy of the altered grievance in its records. (Zamora Decl. ¶ 9 & Ex. C.) OOA's records reflect that the appeal was rejected on February 6, 2014, because supporting documents were not attached. (Voong Decl. at ¶ 8 & Ex. A; Ehlenbach Decl. Ex. B.)

In his opposition, Plaintiff contends that Defendants O'Daniels and Franco obstructed his ability to proceed in this appeal, and on October 18, 2013, during a rules violation report hearing, Defendant Ybarra told him "[They] were disposing of my complaints and will continue to because [he] runs the show and this is [his] house." (Pl.'s Decl. at 24:24-27.) Plaintiff further declares that "on 1-02-14, I sent appeal number 13-04755 for third level review. The appeals office rejected the appeal directing me to sign and date the appeal and send it back, as directed I signed and dated the appeal and re-filed it on 2-14-14. The appeals office never addressed my claims or even responded to the appeal." (Pl.'s Decl. at 24:1-5.)

Because a dispute of fact exists whether Plaintiff filed an inmate appeal with regard to his due process claim against Defendant Ybarra, the motion for summary judgment should be denied, subject to an evidentiary hearing

**III.**

**RECOMMENDATIONS**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment be granted as to Plaintiff's Eighth Amendment claim regarding labeling him a snitch against Defendants Sanchez, Chan, Alva, Johnson, Ybarra, Esqueda and Santos;

///

///

18

2. Defendants' motion for summary judgment be granted as to Plaintiff's Eighth Amendment claim regarding housing him with inmate Russ against Defendants Chan and Sanchez; and

3. Defendants' motion for summary judgment is denied as to Plaintiff's Eighth Amendment claim against Defendant Alva for housing him with inmate Baker and Due Process claim against Defendant Ybarra, subject to an evidentiary hearing.[2]

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **May 25, 2018**

UNITED STATES MAGISTRATE JUDGE

---

[2] Although Defendants request an evidentiary hearing on all of Plaintiff's other claims for which they did not move for summary judgment, the Court will not adjudicate those claims at the evidentiary hearing because those claims were not presented and argued in the present motion. There is no basis for an evidentiary hearing on claims for which Plaintiff did not have fair and adequate notice by way of motion for summary judgment.