# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERRY C. BLAIR,<br><br>    Plaintiff,<br><br>  v.<br><br>CDCR, et al.,<br><br>    Defendants. | Case No.: 1:14-cv-01156-LJO-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>[ECF No. 130] |

Plaintiff Perry C. Blair is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion for summary judgment, filed October 14, 2019.

**I.**

**RELEVANT HISTORY**

Following the Court's screening of the second amended complaint, and dismissal of claims that were not exhausted through the administrative remedy process, this action is proceeding against Defendants Franco and O'Daniels for deliberate indifference (failure to protect); against Defendants Santos, Esqueda, and Ybarra for a due process violation; and against Defendant Johnson for retaliation.

As previously stated, on October 14, 2019, Defendants filed a motion for summary judgment. Plaintiff did not file an opposition and the time to do so has now expired. Accordingly, Defendants' motion for summary judgment is deemed submitted for review without oral argument. Local Rule 230(l).

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d at 942 (quotation marks and citation omitted).

///
///
///
///

## III.

## DISCUSSION

**A.     Summary of Plaintiff's Complaint**

1.     <u>Retaliation Claim</u>

Plaintiff contends Defendant Johnson falsely found him guilty of a Rules Violation Report (RVR), log number C-13-05-004, for possession of a controlled substance (marijuana). Plaintiff contends Defendant Johnson falsified the RVR because he filed an inmate grievance.

On August 8, 2013, Defendant Johnson conducted the hearing on the rules violation report for possession of a controlled substance. Plaintiff presented evidence that the contraband belonged to Plaintiff because it was discovered on the upper locker that was assigned to him. Plaintiff stated that he "didn't know anything about the drugs until 5-1-2013, when I was served with the notice of the 115 R.V.R. for drugs found on 2-5-2013. As far as I'm concerned the correctional officer could of planted it and C.O. Ibbs logic of it belong [sic] to me due to my bunk assignment that is discredited by your C.O. Welsh testimony."

Defendant Johnson opted to call officer Ibbs by way of a phone conference to ask "when you discovered the controlled substance in [building] 5, [cell] 101 on the upper locked was it out in the open where you didn't have to search for it because I'm hearing Blair's 115 for constructive possession?" The Plaintiff interjected with, "you mind [sic] as well just tell him exactly what to say if your['e] going to lead him like I'm some type of idiot." Johnson ended the telephone conversation with Ibbs and informed Plaintiff, "I'm finding you guilty possession-constructive possession." Plaintiff inquired as to the meaning of constructive possession. Johnson replied, "it means you had knowledge of and access to the contraband and therefore guilty of constructive possession." Plaintiff stated "that's crazy your telling me an inmate is guilty regardless of the circumstances. Even their cellie admits guilt as long as they were in the cell … I just testified that I had and still have no knowledge of the drugs, where they came from, or even when they were discovered and your own C.O. debunked your other C.O.'s logic and case, so now your using a loop hole which is basically indisputable as long as I occupied the cell with another inmate. That being the case I'm requesting single cell status because your rule places me in a position whether it is impossible to exist in a cell

3

with another inmate without the threat of violence. Due to the fact that I'm therefore obligated to searched [sic] through all of my cellies personal property and dispose of whatever contraband they may possess. Just search through a cellie's personal property is a violation of cell conduct which will result in a physical altercation especially here on the high security facility on top of this your['e] instructing us to dispose of them contraband or run to the staff to be labeled a rat… That's a death sentence in here. It's already bad enough your['e] forcing us to house with rival gang members against our will." Defendant Johnson responded "your['e] not obligated to house with rival gang members, you can refuse incompatible cellies." Plaintiff informed Johnson, "yeah right, my last three cellies were incompatible and we tried to inform your staff of our rival gang status each time we were threatened with disciplinary reprisal for refusing to accept each other as cellies. Johnson indicated that it was an exception and rarely happens. Plaintiff then informed Johnson that he and his current cellie were rival gang members. In response, Johnson insulted Plaintiff by telling him to just "handle your business [and] if your['e] scared go S.N.Y." Plaintiff replied "nah your['e] the bitch cuz [sic] back in the dayz [sic] C.O.s would actually fight the inmates instead of waiting until we're handcuffed to disrespect us. Now ya'll try to cause disruption amongst us so you can sit back and entertain yourselfs and write us up."

  2.  <u>Failure to Protect Claim</u>

On this same date, Defendants Franco and O'Daniels began telling other inmates that Plaintiff was a snitch and needed to be dealt with. On or about August 29, 2013, Franco and O'Daniels began telling other inmates to "deal with" Plaintiff, because he was a snitch and had snitched on his former cellmate for a drug possession charge. In early September 2013, Plaintiff and his cellmate Baker told O'Daniels that they needed to be separated, to which O'Daniels replied that they should handle their business and fight each other.

On September 5, 2013, officers Franco and O'Daniels approached Plaintiff's cell claiming Baker was scheduled to have a conference with his psychologist. As a result, both Plaintiff and Baker were handcuffed, and Plaintiff was advised that he was being moved because Baker was passing love letters to his psychologist claiming to be from Plaintiff.

4

After Plaintiff and inmate Baker advised officer O'Daniels of the need to be separated, O'Daniels stated "stop acting like bitches and handle your business, that's why ya'll were moved over here where can't nobody hear the screams."

On September 11, 2013, Plaintiff and inmate Baker had a physical altercation inside the cell, and Plaintiff suffered permanent injuries to his lower back, neck, black eye, and an asthma attack due to the responding officers' use of pepper spray to break up the fight.

On November 7, 2013, Plaintiff and inmate Badelle were housed together and were compatible cellmates. However, officer O'Daniels approached Plaintiff's cell to initiate a swap of cellmates. After threatening to take all of inmate Badelle's property, Plaintiff and Badelle signed the chrono as directed and as soon as Plaintiff was uncuffed he attacked inmate Dawson.

3. <u>Due Process Claim</u>

On September 28, 2013, Plaintiff received a RVR log no. ASE-13-09-018 for delaying a peace officer and refusing a cellmate. On October 8, 2013, Plaintiff requested Defendant Sanchez, Sergeant Chan, and inmates Jones, Baker, Young, and Gardner be present at the hearing. On October 10, 2013, Defendant Santos was assigned as Plaintiff's Investigative Employee (IE). Plaintiff refused to have Santos as his IE. The next day, Defendant Esqueda was assigned as Plaintiff's IE.

On October 10, 2013, officer Santos introduced himself as the Investigative Employee (IE) assigned to the rules violation report log numbers ASE-13-09-018 (delaying officer and refusing a cellmate) and ASE-13-09-002 (fighting), and asked Plaintiff "what task the Plaintiff wanted him to carry out in preparation of his defense?" Plaintiff submitted a list of witnesses to be questioned and Santos directed Plaintiff "just plead guilty, you were caught fighting and you refused a celly." Plaintiff replied, "nah I want to present the mitigating factors to the committee in an attempt to get the mid or low disciplinary sanction." Santos began arguing with Plaintiff yelling, "just take the guilty plea." No matter how calm the Plaintiff remained Santos continued to yell at him trying to force him to "just plead guilty."

On October 11, 2013, officer Esqueda introduced himself as the working IE, and after opening the file stated, "This is odd, I've never seen this before. Lt. Ybarra is say [sic] I can't question these witnesses for you. Now did he even know what you wanted to ask them." Officer Esqueda asked

5

Lieutenant Ybarra about the witness interviews and Ybarra stated "it looks as if your line of questions are in preparation of a lawsuit. Your cellie already filed a government claims and he's not about to assist ya'll or help build your case."

Officer Esqueda spoke with Lieutenant Ybarra again and then stated "I will question all your witnesses and type this." However, Esqueda never questioned Plaintiff's inmate or staff witnesses and only typed the Plaintiff's affidavit, and purposely falsified in writing that Plaintiff was "sensitive needs yard status."

During the two rules violation hearings conducted by Lieutenant Ybarra, he refused to allow Plaintiff to speak in his defense.

**B.      Statement of Undisputed Facts[1]**

1.      On August 8, 2013, a disciplinary hearing was conducted on the RVR log no. C-13-05-004, issued to Plaintiff, and Plaintiff was found guilty as charged of possession of a controlled substance. (Johnson Decl. ¶ 3, Ex. A.)

2.      Plaintiff was present and testified at the RVR log no. C-13-05-004 hearing on August 8, 2013. He stated that marijuana had been found in his cell was not his, but was his cellmate's. He further stated that he did not know about the marijuana, and that he told all of his cellmates that if they had marijuana, he did not want to see it. (Johnson Decl. ¶ 3, Ex. B.)

3.      Defendant Lieutenant Johnson was the Senior Hearing Officer (SHO) for the RVR log no. C-13-05-004 hearing on August 8, 2013. Johnson made notes of the statements made by Plaintiff at the hearing, and Plaintiff was found guilty based on the evidence that was presented at the hearing. (Johnson Decl. ¶¶ 2-3, Ex. B.)

4.      Plaintiff believes that Johnson falsified his (Plaintiff's) statements made at the hearing

---

[1] Plaintiff did not file an opposition and neither filed his own separate statement of disputed facts nor admitted or denied the facts set forth by defendant as undisputed. Local Rule 56-260(b). Therefore, Defendants' statement of undisputed facts is accepted except where brought into dispute by Plaintiff's verified complaint. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence). A verified opposition to a motion for summary judgment may also be considered as an opposing affidavit for purposes of the summary judgment rule if it is based on facts within the pleader's personal knowledge. Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998). However, because plaintiff's opposition was not verified, it cannot be treated as an opposing affidavit. Moran v. Selig, 447 F.3d 948, 759-60 (9th Cir. 2006).

6

on RVR log no. C-13-05-004 because Plaintiff and Johnson got into an argument during the hearing about Plaintiff's position on whether the marijuana was his. That is the only reason Plaintiff is aware of why Johnson would falsify his statements. (Mathison Decl., Ex. A at pp. 46-47, 49.)

5. Controlled substances such as marijuana are contraband that is prohibited to be used or possessed by inmates. Inmate possession of controlled substances poses serious safety and security risks within the institution. The RVR proceeding process, such as that which occurred for RVR log number C-13-05-004 issued to Plaintiff, is intended to preserve institutional order, discipline and security. (Johnson Decl., ¶ 5.)

6. Johnson had never met or encountered Plaintiff prior to the August 8, 2013, RVR hearing. (Johnson Decl. ¶ 4; Mathison Decl. Ex. A at pp. 48-49.)

7. At the time of the August 8, 2013 hearing, Johnson was unaware of whether or not Plaintiff had filed any prisoner administrative grievances, which are commonly referred to as Form 602 appeals. (Johnson Decl., ¶ 4.)

8. During the time he was housed at the Substance Abuse Treatment Facility and State Prison, Corcoran (SATF), Plaintiff filed one 602 administrative appeal prior to the August 8, 2013, hearing on RVR log no. C-13-05-004. The appeal, log no. SATF-C-12-03197, concerned his access to the prison law library. (Mathison Decl., Ex. B.)

9. After the August 8, 2013, RVR hearing, Plaintiff filed twelve administrative grievances while housed at SATF and he subsequently filed fifty-three administrative grievances while housed at other prisons. (Mathison Decl., Ex. B.)

10. More than twenty-four hours in advance of the hearing, Plaintiff received written notice of RVR log no. ASE-013-018, for offenses of delaying a peace officer and refusing a cellmate, concerning events that occurred on September 28, 2013. (Mathison Decl., Ex. C., pp. 1, 8.)

11. On October 8, 2013, Plaintiff requested officer Sanchez, sergeant Chan and inmates Jones, Baker Young and Gardner be present at the hearing. (Mathison Decl., Ex. C, p. 9.)

12. On October 10, 2013, Defendant Santos was assigned as Plaintiff's Investigative Employee (IE). (Mathison Decl., Ex. C, pp. 2, 5.)

13. Plaintiff refused to have Santos as his IE. (Mathison Decl., Ex. C, pp. 2, 5, and Ex. A

7

p. 42.)

14. On October 11, 2013, Defendant Esqueda was assigned as Plaintiff's IE. (Mathison Decl., Ex. C, pp. 2, 5.)

15. At the October 24, 2013, RVR hearing, Plaintiff elected to waive the presence of the witnesses he had requested on October 8, 2013. Instead, he requested that inmate Russ be present at the hearing. The request was granted, and Russ was present and made a statement. Plaintiff himself made a statement. (Mathison Decl., Ex. C, pp. 5, 6, 9.)

16. Esqueda as the IE prepared a report which was submitted at the hearing. The report included a written statement by Plaintiff. The report included a statement by Esqueda that he had read the RVR and interviewed Plaintiff and all pertinent staff. (Mathison Decl., Ex. C. pp. 5-7.)

17. The Senior Hearing Officer (SHO), Defendant Ybarra, found Plaintiff guilty of "Delaying a Peace Officer by Refusing Assigned Housing." This finding included a written statement of the specific evidence supporting the finding and the reasons for the finding. (Mathison Decl., Ex. C, pp. 8-10.)

18. More than twenty-four hours in advance of the hearing, Plaintiff received written notice of RVR log no. ASE-013-09-002, for the offense of fighting, concerning events that occurred on September 11, 2013. (Mathison Decl., Ex. D, pp. 1, 6.)

19. On October 10, 2013, Defendant Santos was assigned as Plaintiff's IE. (Mathison Decl., Ex. D, pp. 2, 4.)

20. Plaintiff refused to have Santos as his IE. (Mathison Decl., Ex. D, p. 4.)

21. On October 11, 2013, Defendant Esqueda was assigned as Plaintiff's IE. (Mathison Decl., Ex. D, pp. 2, 4.)

22. At the RVR hearing Plaintiff was given the opportunity to present witnesses, but he declined to do so. (Mathison Decl., Ex. D, p. 7.)

23. At the RVR hearing Plaintiff pled guilty to the charged offense of "Fighting" and declined to make a statement. (Mathison Decl., Ex. D, p. 7.)

24. Ybarra was the Senior Hearing Officer for the RVR hearing. (Mathison Decl., Ex. D, pp. 6-8.)

25. Plaintiff was found guilty based on his guilty plea and on the information in the RVR report. (Mathison Decl., Ex. D, pp. 7-8.)

26. On July 14, 2013, Plaintiff and inmate Baker (T30691) signed a compatibility chrono, stating that they agreed to be assigned as cellmates and indicating they were compatible as cellmates. After a review of the case factors in each inmates C-file, it was determined that there was information available to indicate that they were incompatible as cellmates. Plaintiff and Baker were cellmates from July to September 2013. (Mathison Decl., Ex. A at p. 53 and Ex. F.)

27. Defendants Franco and O'Daniels were not involved in deciding whether to house inmates, or whether or not to move them to or from a cell. Nor were they involved in screening inmates for housing with other inmates. When they moved inmates to different cells, it was always at the direction of the sergeant or other staff person in charge of making the decision to move the inmate, and they were merely following orders. (Franco Decl., ¶ 3; O'Daniels Decl., ¶ 3.)

28. Franco and O'Daniels were not present when Plaintiff and Baker fought in their cell on September 11, 2013. (Franco Decl., ¶ 5; O'Daniels Decl., ¶ 5.)

29. On November 7, 2013, Plaintiff and inmate Dawson (T30691) signed a compatibility chrono, stating that they agreed to be assigned as cellmates and indicating they were compatible as cellmates. After a review of the case factors in each inmates C-file, it was determined that there was no information available to indicate that they were incompatible as cellmates, and they were assigned as cellmates. (Mathison Decl., Ex. A, pp. 73-74 and Ex. J (within Ex. A).)

30. When Plaintiff and Dawson were placed in their cells, Plaintiff attacked Dawson, once Plaintiff was un-handcuffed and while Dawson remained handcuffed. Franco was able to stop Plaintiff from continuing to attack Dawson. (Franco Decl., ¶ 6 and Ex. A.)

31. Plaintiff was not injured when he attacked inmate Dawson on November 7, 2013. (Mathison Decl., Ex. E, pp. 2, 12.)

32. Franco assisted in moving Plaintiff to his new cell assignment with Dawson on November 7, 2013. (Franco Decl., ¶ 6.)

33. O'Daniels was not present when Plaintiff attacked Dawson on November 7, 2013. (O'Daniels Decl., ¶ 6.)

34. Plaintiff does not allege that he was ever attacked by another inmate as a result of being labelled a "rat" or "snitch" by SATF custody staff. There is no evidence that Plaintiff was attacked by another inmate under such circumstances. (Sec. Amd. Compl., ECF No. 14.)

**C.      Analysis of Claims**

Defendants argue that Plaintiff cannot demonstrate that Johnson's actions were retaliatory; there was no due process violation for the disciplinary hearings of the RVRs issued to Plaintiff; and Franco and O'Daniels were not substantively deliberately indifferent to Plaintiff's safety with regard to the attack incidents between Plaintiff and his cellmates, Baker and Dawson. In the alternative, Defendants contend they are entitled to qualified immunity.

1.      Retaliation Claim

Plaintiff contends that Defendant Johnson falsely found him guilty of RVR, log number C-13-05-004, for possession of a controlled substance (marijuana) because Plaintiff filed an inmate grievance.

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). Also protected by the First Amendment is the right to pursue civil rights litigation in federal court without retaliation. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Here, Johnson noted Plaintiff's statements during the RVR hearing and then presented them, from his notes, in the record of the RVR. (Johnson Decl., ¶¶ 2-3, Ex. B.) Plaintiff was found guilty of the RVR based on the evidence presented at the hearing, including his own statements, which were not falsified. (Johnson Decl., ¶ 3, Exs. A & B.) Johnson declares that he was not aware that Plaintiff had filed any grievances. (Johnson Decl., ¶ 4.) In fact, it is undisputed that Plaintiff had not filed any grievances against Johnson, or any other SATF staff, and the sole grievance he had filed at SATF

concerned the prison law library. (Mathison Decl., Ex. B.) In addition, it is undisputed that Johnson and Plaintiff had never even met or encountered one another prior the hearing. (Johnson Decl., ¶ 4; Mathison Decl., Ex. A pp. 48-49.) In fact, at his deposition, Plaintiff admitted that the only reason Johnson acted to allegedly falsify his statements was because he and Johnson got into an argument during the RVR hearing. (Mathison Decl., Ex. A at pp. 46-47, 49.)

Moreover, there is no showing that there was not a legitimate penological purpose in issuing the RVR. Plaintiff must also demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of," Pratt, 65 F.3d at 808, and the Court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory," id. at 807 (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)). It is undisputed that controlled substances such as marijuana are contraband that is prohibited to be used or possessed by inmates. (Johnson Decl., ¶ 5.) Inmate possession of controlled substances poses serious safety and security risks within the institution. (Id.) The issuance of a rules violation report for possession of contraband is intended to preserve institutional order, discipline and security. (Id.)

There is no evidence to controvert the conclusion that Plaintiff constructively possessed the contraband found in his cell and the issuance of the rules violation served a legitimate correctional goal of ensuring safety and security of the institution, correctional officers, and inmates. Plaintiff has failed to provide any evidence establishing that Defendant's actions did not reasonably advance a legitimate correctional goal. Therefore, he has not met his burden of showing a triable issue of fact as to his claim of retaliation and Defendant Johnson is entitled to summary judgment.

2. Due Process Claim

Plaintiff contends that his due process rights were violated by Defendants Santos, Esqueda and Ybarra based on the alleged denial of the opportunity to present witnesses at his disciplinary hearing for RVR, log numbers ASE-013-09-018 and ASE-13-09-002.[2]

---

[2] The claim against Ybarra as to RVR log number ASE-13-09-002 was dismissed for failure to exhaust administrative remedies. (ECF No. 126 at 2.)

11

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556, (1974). With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), abrogated on other grounds by Sandin v. Connor, 515 U.S. 472 (1995). In addition "[s]ome evidence" must support the decision of the hearing officer. Superintendent v. Hill, 472 U.S. 445, 455 (1985). The standard is not particularly stringent and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached . . . ." Id. at 455-56.

At the hearing on ASE-013-09-018, Plaintiff waived his right to present witnesses he had previously requested, and the one witness he did request was present and testified at the hearing. (Mathison Decl., Ex. C, pp. 5, 6, 9.) Further, Plaintiff submitted a detailed written statement responding to the charges. (Mathison Decl., Ex. C, pp. 5, 6, 9.) In addition, Esqueda as his IE prepared and submitted a report with evidence at the hearing, which included Plaintiff's lengthy statement. (Mathison Decl., Ex. C. pp. 5-7.) Any claim by Plaintiff that Esqueda failed to perform his duties as an IE does not state a potentially colorable due process claim as there is no constitutional right to an IE. See Larkin v. Davey, No. 2:14-cv-2497-TLN-GGH, 2015 WL 1440616, at *6 (E.D. Cal. Mar. 27, 2015) ("[T]here is no right to a thorough investigative report or even an investigation, nor even a right to assignment of an investigative employee, which was provided to petitioner in this case); Fuqua v. Swarthout, No. 2:12-cv-02045-TLN DAD P, 2013 WL 5493373, at *5 (E.D. Cal. Oct. 2, 2013 (no right to investigative employee); Tolliver v. Santoro, No. 15-09562-VSF (AS), 2016 WL 8732347, at *11 (C.D. Cal. May 20, 2016), report and recommendation adopted, 2016 WL 4035958

(C.D. Cal. July 8, 2016) ("[T]he Court has been unable to locate, any authority, federal or otherwise, establishing that an inmate is guaranteed the effective assistance of his assigned investigative employee.") Indeed, unlike a staff assistant, an IE is appointed to assist the hearing officer, not the inmate. Cal. Code Regs. tit. 15, § 3318(a). It is undisputed that Plaintiff was allowed to call inmate Russ at the hearing-who was his cellmate at the time of the incident. Thus, Plaintiff was not placed in the position in which only his testimony was the basis on which he could change the charge.

At the hearing on ASE-13-09-002, Plaintiff was given the opportunity to present witnesses, but he declined to do so. (Mathison Decl., Ex. D, p. 7.) Further, Plaintiff pled guilty, and declined to make a statement. (Mathison Decl., Ex. D, p. 7.) Plaintiff was therefore found guilty based on his plea along with the information in the RVR report. (Mathison Decl., Ex. D, pp. 7-8.) Thus, Plaintiff has failed to demonstrate a due process violation with regard to this hearing.

3. Failure to Protect Claim

Plaintiff claims that Defendants Franco and O'Daniels housed him with incompatible cellmates, and labeled him a "snitch" and a "rat" to other inmates.

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994). Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. Farmer, 511 U.S. at 833-34 (quotation marks omitted); Clem v. Lomeli, 566 F.3d 1177, 1181 (9th Cir. 2009); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm. Farmer, 511 U.S. at 834, 841; Clem, 566 F.3d at 1181; Hearns, 413 F.3d at 1040. In addition, if failure to protect is alleged, the defendant must have had a reasonable opportunity to intervene. Orwat v. Maloney, 360

13

F.Supp.2d 146, 155 (D. Mass. 2005), citing Gaudreault v. Municipality of Salem, 923 F.2d 203, 207 at n.3 (1st Cir. 1991). Prison officials must provide prisoners with personal safety. See Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986), abrogated in part on other grounds by Sandin v. Conner, 515 U.S. 472 (1995).

### a. Cellmate Baker

On July 14, 2013, Plaintiff and inmate Baker signed a compatibility chrono, stating that they agreed to be assigned as cellmates and indicated they were compatible as cellmates. (Mathison Decl., Ex. A at p. 53 and Ex. F.) On September 11, 2013, Plaintiff and Baker had a physical altercation inside the cell. It is undisputed that Defendants Franco and O'Daniels were not involved in deciding where to house inmates or in screening inmates for housing, and when they moved inmates to different cells they were merely following orders to do so. (Franco Decl., ¶ 3; O'Daniels Decl., ¶ 3.) It is further undisputed that neither Defendant Franco nor O'Daniels did not have the opportunity to intervene in the fight between Plaintiff and inmate Baker. Neither Franco nor O'Daniels were present when the fight occurred, and they had no involvement in the events pertaining to the fight. (Franco Decl., ¶ 5; O'Daniels Decl., ¶ 5.)

### b. Cellmate Dawson

On November 7, 2013, Plaintiff and inmate Dawson (T30691) signed a compatibility chrono, stating that they agreed to be assigned as cellmates and indicating they were compatible as cellmates. After a review of the case factors in each inmates C-file, it was determined that there was no information available to indicate that they were incompatible as cellmates, and they were assigned as cellmates. (Mathison Decl., Ex. A, pp. 73-74 and Ex. J (within Ex. A).) It is undisputed that Defendants Franco and O'Daniels were not involved in deciding where to house inmates or in screening inmates for housing, and when they moved inmates to different cells they were merely following orders to do so. (Franco Decl., ¶ 3; O'Daniels Decl., ¶ 3.) It is undisputed that inmate Dawson did not attack Plaintiff; rather, it was Plaintiff who attacked inmate Dawson while Dawson

was handcuffed.[3] Defendant O'Daniels was not present and had no involvement in the incident. (O'Daniels Decl. ¶ 35.) Defendant Franco was present, but the inmates had been placed in the locked cell together, and when Plaintiff's handcuffs were removed through the food port, Plaintiff immediately attacked Dawson within the locked cell. (Franco Decl., ¶ 6 and Ex. A.) Franco was able to stop Plaintiff from continuing to attack Dawson. (Id.)

      **c.    Labeling Plaintiff a Snitch**

With regard to Plaintiff being attacked by other inmates due to having been labeled as a "snitch" or a "rat," Plaintiff does not allege, and there is no evidence that, he was attacked by other inmates under such circumstances. (Sec. Amd. Compl., ECF No. 14.) Thus, there was no harm to Plaintiff, even had there been such labelling. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."); Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990) (delay in treatment does not constitute deliberate indifference unless it causes substantial harm); see also Lemire v. California, 726 F.3d 1062, 1074 (9th Cir. 2013) (a plaintiff must "demonstrate that the defendants' actions were both an actual and proximate cause of their injuries."). Accordingly, Plaintiff has failed to state a claim for relief, and Defendants are entitled to summary judgment.

## IV.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that Defendants' motion for summary judgment be granted, and judgment be entered in favor of Defendants.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with this Findings and Recommendation, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's

---

[3] As to the objective component of deliberate indifference, this demonstrates that there was no substantial risk of harm to Plaintiff, from Dawson, regarding this incident. (Franco Decl., Ex. A.) Indeed, Plaintiff was not even injured. (Mathison Decl., Ex. E, pp. 2, 12.)

Findings and Recommendation." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **January 29, 2020**

UNITED STATES MAGISTRATE JUDGE